Oscar TOLBERT, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 1161–85.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 27, 1988.

Gerald M. Brown, Temple, for appellant.

Charles J. Sebesta, Jr., Dist. Atty., Caldwell, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

Appellant was convicted before the trial court for aggravated sexual assault of a child and assessed a term of 40 years confinement in the Texas Department of Corrections. See V.T.C.A., Penal Code, §§ 22.-011(a)(2)(B), 22.021(a)(5) (Vernon 1985). We will affirm the conviction.

On appeal to the First Court of Appeals, appellant argued the trial court erred in admitting over objection a pre-trial videotaped interview of the 11–year-old complainant made pursuant to Art. 38.071, § 2, V.A.C.C.P. Specifically, appellant contended that the statutory provision in question is an unconstitutional deprivation of his right of confrontation under the Sixth Amendment to the United States Constitution and under Art. I, § 10 of the Texas Constitution. The Court of Appeals disagreed, holding that Art. 38.071, § 2, V.A.C.C.P. was not "... prima facie invalid under the United States or Texas Constitution,...." *Tolbert v. State,* 697 S.W.2d 795 (Tex.App.—Houston [1st Dist.] 1985).

In his petition for discretionary review, appellant now presents three grounds for review, all dealing with the propriety of admitting the videotaped interview into evidence. He argues, in turn, that his right of confrontation was violated during the videotaping procedure, that he was denied effective assistance of counsel during the making of the videotape and finally, that he was denied effective assistance of counsel during the showing of the taped interview.

Recently, in *Long v. State,* 742 S.W.2d 302 (Tex.Cr.App.1987), a plurality[1] of this Court held the following:

---

1. This writer continues his dissent as to the analysis and ultimate disposition of the issues raised in *Long v. State,* supra.

Based on our previous observations and authorities for reasons stated, we find that Art. 38.071, § 2, supra, is both facially and as it was applied to the appellant an unconstitutional deprivation of his right of confrontation under the Sixth and Fourteenth Amendments to the United States Constitution. In addition, and independent of the above finding, we further find that Art. 38.071, § 2, supra, is both facially and as it was applied to this appellant an unconstitutional deprivation of his state guaranteed right of confrontation under Art. I, § 10 of the Texas Constitution.[2]

Following the opinions in *Long v. State*, supra, we are constrained to find that the trial court erroneously admitted the Art. 38.071, § 2, supra, videotape into evidence at appellant's trial. Unlike the case in *Long v. State*, supra, however, the instant cause was tried before the court and not before a jury, so the fact that inadmissible evidence was received does not automatically call for reversal. It is a well-settled rule of general acceptance that in a trial before the court, the presumption is entertained that the court as trier of fact disregarded any inadmissible evidence admitted at trial. See *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App.1985); *Keen v. State*, 626 S.W.2d 309 (Tex.Cr.App.1981); *Komurke v. State*, 562 S.W.2d 230 (Tex.Cr.App.1978); *Hernandez v. State*, 556 S.W.2d 337 (Tex.Cr.App.1977); *Larocca v. State*, 479 S.W.2d 669 (Tex.Cr.App.1972) and cases cited therein; *Milligan v. State*, 170 Tex.Cr.R. 584, 343 S.W.2d 455 (1961); *Arnold v. State*, 161 Tex.Cr.R. 344, 277 S.W.2d 106 (1955), and cases cited therein. See also *Flowers v. State*, 482 S.W.2d 268 (Tex.Cr.App.1972). Said rule is also in effect at the punishment phase of a criminal trial. *Tamminen v. State*, 653 S.W.2d 799 (Tex.Cr.App.1983); *Kimithi v. State*, 546 S.W.2d 323 (Tex.Cr.App.1977); *Maden v. State*, 542 S.W.2d 189 (Tex.Cr.App.1976).

The effect of the aforesaid rule is that appellant carries the burden of proving that the trial court relied upon or even considered the inadmissible evidence in reaching his verdict or determining punishment. *Tamminen v. State*, supra; *Angelle v. State*, 571 S.W.2d 301 (Tex.Cr.App. 1978). In *Arnold v. State*, supra, the Court approved the following test to be used to determine the question presented:

When a cause is tried before the court and there is nothing to show that the judgment was based upon the inadmissible evidence (such as by findings or conclusions of fact or law) it will be presumed that the trial judge disregarded incompetent evidence admitted at the trial and the judgment will not be reversed on appeal on the ground of the admission of incompetent evidence if sufficient proper evidence was admitted to sustain the judgment. Id 277 S.W.2d at 107.

See also *Montes v. State*, 473 S.W.2d 34 (Tex.Cr.App.1971); *Milligan v. State*, supra.

In *Milligan v. State*, supra, the appellant argued that the evidence was insufficient to support his DWI conviction because the State failed to prove up the chain of custody of the blood sample introduced into evidence over objection. Overruling that appellant's contention, we observed:

"He overlooks the fact that this was a trial before the court, a jury being waived, and that there was other evidence besides the blood sample to support the court's finding of intoxication. In such cases, this Court presumes that the trial court ignored any inadmissible evidence." (citation omitted).

*Milligan*, 343 S.W.2d at 457. See also *Hattersley v. State*, 487 S.W.2d 354 (Tex.Cr. App.1972) [appellate court may assume trial court did not consider inadmissible testimony as to reliability of prosecution witnesses]; *Pereida v. State*, 491 S.W.2d 668 (Tex.Cr.App.1973) [no reversible error in trial court's failure to grant appellant's motion to suppress pistol discovered during search of appellant where presumption entertained that court ignored inadmissible

**2.** Section 2 of the statute was also held to violate the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and the Due Course of Law provision of Art. I, § 19 of the Texas Constitution.

evidence, if any]; *Angelle v. State,* supra, [conviction affirmed where no showing that trial judge relied on or even considered charges pending against appellant]; *Ex Parte LeBlanc,* 615 S.W.2d 724 (Tex.Cr. App.1981) [presumption that wife's testimony improperly admitted was disregarded].

In the case at bar, there is no question that the videotaped interview with the complaining witness was played in the judge's presence at the beginning of trial. Appellant's motion to suppress was carried along until a later point in the trial, when the tape was admitted into evidence. However, appellant has failed to show that the judgment was based upon the evidence erroneously admitted, and our own examination of the record does not disclose overt reliance upon that evidence by the trial judge. Thus, after analysis through the first prong of the *Arnold* test, the judicial presumption may be further entertained. See *Arnold v. State,* supra.

Even with the appellant's failure to sustain his burden of proving reliance or consideration of the inadmissible evidence by the trial court, however, the judicial presumption should not be followed unless "sufficient proper evidence was admitted to sustain the judgment." Id 277 S.W.2d at 107. See also *Ex Parte LeBlanc,* supra. Here, three witnesses testified for the prosecution. The child-complainant testified that appellant had put his "ding-a-ling" or penis into her mouth on one occasion in Caldwell,[3] after which she became physically ill. According to the child, she was afraid to tell her mother of her father's actions because he threatened to "whip" her. She first informed her grandmother of the conduct after she and her mother moved to her grandmother's country residence.

Doris May Tolbert, wife of appellant and mother of the complainant, testified that the Tolbert family moved to Caldwell in 1982 and lived in a "white house" and later a "red house" across the street. It appears that Mrs. Tolbert was unaware of her husband's activities until March of 1984, when she and the complainant moved in with the grandmother. After being informed, Mrs. Tolbert took the child to a doctor and then to police authorities.

The first witness to testify for the State was the videotape interviewer. Examination of her testimony shows nothing of probative value as to the offense itself, her testimony largely relating to the predicate for admission of the videotape.

We are then left with the testimony of the complainant and her mother. The child's testimony established that appellant placed his "ding-a-ling" or penis into her mouth while the family was living in the "red house" in Caldwell, on or near the date specified in the indictment. Mrs. Tolbert testified as to background for the incident, placing the family at certain locations within the particular time frame involved. She also testified as to the complainant's outcry to grandmother and mother, respectively. Finally, she related to the court her actions in taking the complainant to the doctor and to law enforcement authorities.

The indictment charges that appellant did "intentionally and knowingly cause the penetration of the mouth of (Complainant), a child who was then and there younger than 14 years of age and not the spouse of Oscar Tolbert, Jr., by the penis of the said Oscar Tolbert, Jr.,...."

As applied to the instant case, the State was charged with proving the following elements under §§ 22.011(a)(2)(B) and 22.-021, supra:

(1) Appellant;

(2) intentionally or knowingly;

(3) caused the penetration of the mouth of complainant, a child younger than 14 years of age;

(4) with appellant's sexual organ.

From the testimony of the child complainant and her mother, we find sufficient proper evidence was admitted to prove the elements of the crime charged and to sus-

---

**3.** Both the videotape and an audio tape recorded earlier contained other acts of sexual abuse over a period of years. The earlier recording was admitted for a limited purpose unrelated to the issue at bar, and there is no indication in the record that this "evidence" was considered by the trial court.

tain the judgment. In terms of the test enunciated in *Arnold,* supra, therefore, (1) in light of the absence of any proof by appellant that the trial court relied upon or considered the videotaped interview with the complainant, and (2) given the evidence properly received as to appellant's culpable conduct in this matter, we will follow the presumption that the trial judge disregarded any incompetent evidence admitted in the case. See *Tamminen v. State,* supra; *Keen v. State,* supra; *Komurke v. State,* supra; *Milligan v. State,* supra; *Arnold v. State,* supra.

Finding no reversible error, the judgments of the Court of Appeals and the trial court are affirmed.

CAMPBELL, J., concurs in the result, but would order that this cause be remanded to the Court of Appeals for a harmless error analysis under Tex.App.Pro. Rule 81(b)(2).

CLINTON and DUNCAN, JJ., dissent.

MILLER, Judge, concurring.

I agree with the majority that there is no reversible error in this cause and that appellant's conviction should be affirmed. I do not agree, however, with the majority opinion's interpretation and application of the judicial presumption which is entertained when inadmissible evidence has been improperly admitted in a trial before the court.

The majority opinion correctly states that under certain circumstances we may presume that, in a trial before the court, the trial judge disregards inadmissible evidence. See *Tolbert,* at 633. This presumption is a part of the rule concerning the harm to the defendant by the admission of improper evidence in a trial before the court.

The majority also correctly states the applicable requirements for review of inadmissible evidence admitted in a trial before the court. This test, enunciated in *Arnold v. State,* 161 Tex.Cr.R. 344, 277 S.W.2d 106 (1955), has two steps. First, if there is nothing in the record to show that the trial court's judgment was based upon the inadmissible evidence at trial then it is then presumed that the trial judge disregarded the improperly admitted evidence. Second, assuming the first step is met, the case will be reversed on appeal only if insufficient *proper evidence* was admitted to sustain the verdict.

I disagree with the majority's application of this test. The majority opinion states:

"Even with the appellant's failure to sustain his burden of proving reliance or consideration of the inadmissible evidence by the trial court, however the judicial presumption should not be followed unless 'sufficient proper evidence was admitted to sustain the judgment.'"

At 634. The majority opinion would have us apply this judicial presumption only if sufficient proper evidence was admitted at trial to sustain the verdict. The majority opinion cites *Arnold,* supra, and *Ex parte LeBlanc,* 615 S.W.2d 724 (Tex.Cr.App. 1981), for support of this statement, but I do not interpret either case to support the majority's interpretation.

I believe the majority opinion confuses the second prong of the *Arnold* test. The presumption that the trial court disregards inadmissible evidence is not dependent upon whether there is sufficient proper evidence at trial to sustain the verdict. Rather, the presumption is applied when the defendant fails to show the trial judge relied upon or considered the inadmissible evidence at trial. See *Bryan v. State,* 406 S.W.2d 210 (Tex.Cr.App.1966), *cert. denied* 386 U.S. 1023, 87 S.Ct. 1378, 18 L.Ed.2d 461 (1966); *LeBlanc,* supra; and *Arnold,* supra.

I also disagree with the majority opinion's application of the two-prong test to this case. The majority opinion states:

"From the testimony of the child complainant and her mother, we find sufficient proper evidence was admitted to prove the elements of the crime charged and to sustain the judgment. In terms of the test enunciated in *Arnold,* supra, therefore, (1) in light of the absence of any proof by appellant that the trial court relied upon or considered the video-

taped interview with the complainant, and (2) given the evidence properly received as to appellant's culpable conduct in this matter, we will follow the presumption that the trial judge disregarded any incompetent evidence admitted in the case."

See at 634–35. I believe the majority opinion has applied the prongs of the *Arnold* test in the wrong order.

I would apply the *Arnold* test in the following manner to decide whether there was reversible error in the trial court's admission of improper evidence at trial. First, there is nothing in the record to indicate the trial judge relied upon the inadmissible videotape at trial. Thus, we presumed the trial judge disregarded the inadmissible evidence at trial. See and cf. *Ex parte Stacey*, 709 S.W.2d 185 (Tex.Cr.App. 1986); *Thompson v. State*, 641 S.W.2d 920 (Tex.Cr.App.1982); and *Schneider v. State*, 594 S.W.2d 415 (Tex.Cr.App.1980). Since there was sufficient proper evidence admitted at trial to sustain the trial court's judgment, the admission of the improper evidence, the videotape, was not reversible error.

I join the majority opinion with these comments.

TEAGUE, Judge, dissenting.

This Court granted appellant's petition for discretionary review in order to review the following, and only the following, three grounds for review:

1. THE COURT OF APPEALS INCORRECTLY HELD THAT THE TRIAL COURT DID NOT ERR IN OVERRULING APPELLANT'S PRETRIAL MOTION TO SUPPRESS THE VIDEOTAPED INTERVIEW OF [THE CHILD VICTIM IN THIS CAUSE] ON THE BASIS THAT ARTICLE 38.071 OF THE TEXAS CODE OF CRIMINAL PROCEDURE DENIED APPELLANT'S RIGHT TO CONFRONTATION DURING THE VIDEOTAPING AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE TEXAS CONSTITUTION.

2. THE COURT OF APPEALS INCORRECTLY HELD THAT THE TRIAL COURT DID NOT ERR IN OVERRULING APPELLANT'S PRE–TRIAL MOTION TO SUPPRESS THE VIDEOTAPED INTERVIEW OF [THE CHILD VICTIM IN THIS CAUSE] ON THE BASIS THAT ARTICLE 38.071 OF THE TEXAS CODE OF CRIMINAL PROCEDURE DENIES APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DURING THE VIDEO TAPING AS GUARANTEED TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE TEXAS CONSTITUTION.

3. THE COURT OF APPEALS INCORRECTLY HELD THAT THE TRIAL COURT DID NOT ERR IN OVERRULING APPELLANT'S PRETRIAL MOTION TO SUPPRES THE VIDEOTAPED INTERVIEW OF [THE CHILD VICTIM IN THIS CAUSE] ON THE BASIS THAT ARTICLE 38.071 OF THE TEXAS CODE OF CRIMINAL PROCEDURE DENIES APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DURING THE SHOWIN OF THE VIDEOTAPE AS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE TEXAS CONSTITUTION.

As easily seen, the question of the sufficiency of the evidence is not before us for review purposes. Nevertheless, for reasons not expressed in the majority opinion, it reviews the sufficiency of the evidence. I am unaware where this Court has ever *expressly* laid down the rule that in deciding whether some form of constitutional or non-constitutional trial error is reversible error such would be decided on the basis whether the evidence was sufficient to sustain the defendant's conviction. The usual rule invoked and applied in making the determination whether the trial error calls for the case to be reversed is to answer the question whether there is a reasonable possibility that the inadmissible evidence might have contributed to either the conviction or the punishment assessed. If the

answer is yes, then the error cannot be considered harmless. Perhaps I can finally say something nice about one of the Rules of Appellate Procedure, which is Rule 81(b)(2), which appears to give this Court "the rule" when deciding whether *any* trial error is reversible error. See my discussion *post.* It appears to me that this is the rule that should be invoked and applied in this case. At least the justices on the courts of appeals would know which rule must be followed.

Probably the biggest problem that I have with the cornucopia type majority opinion, on the issue whether the error that the majority of this Court agrees occurred in this case, lies in the fact that, in child videotape type cases, it gives to courts of appeals absolutely no meaningful guidance. To easily see why the judges on this Court should be concerned over this, each one of us must imagine that we are sitting on a court of appeals and must decide whether the erroneous admission into evidence of a videotape, in a child sexual abuse case, constitutes reversible error. I find that if one attempts to use the majority opinion as guidance, it would likely be a long day at the office.

The majority opinion holds that under this Court's decision of *Long v. State,* 742 S.W.2d 302 (Tex.Cr.App.1987), which held that the above statute is "both facially and as it was applied ... an unconstitutional deprivation of [the defendant's] right of confrontation under the Sixth Amendment to the United States Constitution [and under Art. I, § 10 of the Texas Constitution", the trial judge in this cause erred in admitting into evidence over appellant's objection the videotape of the child-victim. As the majority opinion does not address the second and third grounds for review, I must assume that its disposition of appellant's first ground for review renders those grounds for review moot.

I am compelled to file this dissenting opinion for many reasons.

In *Long,* supra, the child victim did not testify during the State's case in chief. However, she testified as a rebuttal witness for the State. Here, however, the child complainant testified against appellant during the State's case in chief regarding the elements of the offense that appellant was accused of committing. Thus, appellant was not denied his federal or state constitutional rights of cross-examination or confrontation of the complainant. I am therefore at a loss to understand how appellant was denied during his trial the above constitutional rights. Factually, *Long,* supra, is easily distinguishable from this cause.

Although I disagree that *Long v. State,* supra, controls the disposition of appellant's first ground for review, the majority opinion nevertheless holds that under *Long v. State,* supra, the trial court erred in admitting the videotape into evidence.

Given its holding, why doesn't it invoke and apply Rule 81(b)(2) of the Rules of Appellate Procedure to the error? Rule 81(b)(2) provides: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, *unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.*" (My emphasis.) The rule makes no distinction between a bench trial and a jury trial. To me, this rule means that if this Court finds there was error, which it has done in this cause, before the judgment of the court of appeals, can be affirmed, this Court must also find that *in no degree* did the error contribute either to appellant's guilt or his punishment.

In holding that the error was not reversible error, what standard of review is the majority opinion using? It appears to me that it is attempting to use some sort of smorgasbord, a melange, or a heterogeneous mixture of different standards in order to completely toss appellant out the front door of the Supreme Court Building, where this Court is housed.

In holding that the error was not reversible error, the majority opinion first holds that it will presume the trial judge ignored the videotape evidence which the trial judge himself admitted into evidence over appellant's objection. The majority opinion

then says to appellant, in my words: "Appellant, if you don't like that reason why we toss you out the door, what do you think about this one?" The second reason given is premised on the assumption that if one ignores the improperly admitted videotape evidence, which is what the majority opinion just got through holding was presumably ignored by the trial judge, the other properly admitted evidence is sufficient to sustain appellant's conviction. Notwithstanding the above, the majority opinion never discusses what impact the erroneously admitted videotape evidence might have had on the trial judge's decision to assess appellant's punishment at 40 years' confinement in the Department of Corrections, which exceeded the minimum punishment by at least 35 years. Even under the conventional rule that is used in deciding whether the error was harmless, that aspect of the case also must be considered.

As to the first reason the majority opinion gives, I must point out that Judge W.C. Davis, the author of the majority opinion, fails to mention therein the fact that he, together with all other judges and the presiding judge of this Court except Judge Mc Cormick, who only concurred in the result without opinion, joined this Court's opinion of *Polk v. State,* 729 S.W.2d 749 (Tex.Cr. App.1987). Judge Davis also fails to discuss the "opposite presumption" rule, which is that if trial is before the trial judge and the trial judge is later found to have erroneously overruled a defendant's objection to the admissibility of certain evidence, unless the record reflects or indicates that the trial judge ignored the inadmissible evidence it is presumed that he relied on that evidence in deciding the accused's guilt or the punishment that he assessed.

In his opinion for the Court in *Polk,* supra, Judge Clinton remarked that the rule that Judge Davis relies upon today came to this Court from the civil courts, and that "it is ironic that this Court has not also tempered it as the civil courts have." fn. 4. Thus, given the fact that eight judges joined *all* of the *Polk,* supra, opinion, and none took issue with what Judge

Clinton so eloquently pointed out in his footnote, I thought that this Court had, at least implicitly, satisfactorily laid to rest, and given its apologies to any cases holding to the contrary, the rule that Judge Davis uses as his first reason. Thus, here, the presumption rule that Judge Davis invokes and applies to this cause is inapplicable because the trial judge *overruled* appellant's objection, and did not sustain it.

The majority opinion's next reason why the trial judge's error is not reversible error is based upon its analysis of the evidence, which it finds is, without considering the videotape evidence, sufficient to sustain the conviction. The majority opinion never expressly discusses that it is invoking and applying one of the many "harmless error" rules that presently might exist in our law. Nevertheless, it appears to me that this is just another guise for the harmless error rule of law that is today so popular with some members of this Court.

The use of the harmless error rule to toss appellant out the front door needs reexamining.

Given the fact that appellate court judges are not supposed to engage in fact-finding, because their province is thought to preclude substitution of their judgment for that of the trier of fact, and given the fact that violation of a legal rule at trial is, or should be, a serious matter to all concerned persons, although appellate court judges can say *why* the "error" would not have affected *their* individual decision, they cannot say *why* they believe the "error" did not affect *the decision of the trier of facts.* Harmfulness of an "error" can only be gauged by the personal reaction of an individual to it. When an appellate court judge says that the inadmissible evidence would not have affected him, he is speaking only for himself as to his decision. However, it is legally impossible for him to say why he believes that the "error" did not have affect the decision of the trier of facts, either on guilt of punishment.

In our system of justice, fairness and impartiality are produced, if at all, by operation of legal rules and by the assignment

of adjudicatory responsibilities. The harmless error rule, in whatever form it might come, on the other hand, authorizes individual appellate court judges to pardon the violation of any legal precept, constrained only by their personal views of fairness and justice. I do not believe that this is the sort of method citizens of this State have a right to expect in a government of laws.

By the above statements, I do not mean to suggest that appellate court judges are less qualified than the actual trier of facts to decide ultimate issues of guilt and punishment. But in our system of criminal justice such decisions are not part of appellate court judges adjudicatory responsibilities, and it is an outrageous travesty to confer such authority upon them by subterfuge. When this Court invokes and applies the harmless error rule to the error that the majority has found occurred in this cause, in my view, such action actually represents a seizure by this Court of veto power inconsistent with its proper role in our State government. Bound to apply and follow the law, this Court's judges should not consciously refuse to do so even when the consequence seems manifestly unjust. There should be no rule of law in our jurisprudence, in more than a miniscule number of conceivable cases, where the error that is found to exist is harmless. Given the holding by the majority opinion, that the trial judge erred in admitting into evidence the evidence of the videotape of the child-witnes, and the facts of this cause, this is clearly not one of those "misiscule" cases.

A majority of this Court, having found that the trial judge erred in admitting into evidence over appellant's objection the videotape, and further finding, albeit implicitly, that the error was properly, specifically, and timely preserved, and that it was neither waived, forfeited, nor cured, should now do its appellate court duty, which is to reverse the judgment of the court of appeals and remand the cause to the trial court for proceedings not inconsistent with its holding that the trial court erred in admitting into evidence over objection the videotape.

I must say a few words about the applicability of the doctrine of stare decisis to this cause. That doctrine is usually defined to mean that when an appellate court has once laid down a principle of law as applicable to a certain state of facts, it will adhere to that principle and apply it to all future cases, where the facts are substantially the same; regardless of whether the parties are the same. Until that decision of the court is overruled, it should be adhered to, not only by inferior lower courts but that court itself.

Given the majority opinion's reliance upon what this Court stated in *Long v. State*, supra, and given the fact that in *Long v. State*, supra, and *Jolly v. State*, 739 S.W.2d 345 (Tex.Cr.App.1987), this Court made no harmless error analysis, but simply remanded those causes to the trial court, why does this Court not order done what it ordered done in those cases? How are those cases distinguishable from this one, as to what must be ordered done? I believe that the majority owes some sort of explanation, don't you?

Is the majority opinion holding that courts of appeals, in videotape child sexual abuse cases, must always do the analysis that this Court uses in this cause? Of course, if that is to be the law, then this Court should expressly state this in its majority opinion, and explain, if it can, why it chose not to hold this in *Long*, supra, and *Jolly*, supra. If Rule 81(b)(2) is not applicable to this cause, then the majority opinion should also explain why this is so.

I also must ask: Why does this Court not remand this cause to the Houston [First] Court of Appeals, from where it came, for that court to first make a harmful error analysis, whatever that analysis might be? Generally speaking, this Court is not a de novo reviewing court; it is a Court that is supposed to review decisions of courts of appeals. The court of appeals has not yet been given the opportunity in this cause to make a harmless error analysis. Thus, it should be the court of appeals that gets the first opportunity to discuss that issue, and not this Court.

For all of the above and foregoing reasons, I respectfully dissent to the majority opinion, which I find that only one who enjoys eating a smorgasbord sandwich might enjoy reading.