**Karl Riley PREVO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–88–388–CR.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1989.

Rehearing Denied Oct. 19, 1989.

Richard Frankoff, Houston, for appellant.

John D. Holmes, Houston, for appellee.

Before NYE, C.J., and DORSEY and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

The trial court found appellant, Karl Prevo, guilty of the misdemeanor offense of official oppression and assessed punish-

ment at a probated one year jail sentence plus a fine of $2,000.00. Appellant now complains of the trial court's judgment by nine points of error. We affirm.

The evidence adduced at trial may be summarized as follows. The complainant, Denise Cannon–Chatam, testified that she lived alone with her three children. Between the hours of 12:30 and 1:00 a.m. on January 13, 1987, she was awakened by the ringing of her doorbell. Wearing only a robe, nightshirt, socks, and underwear, she looked outside her window and observed a vehicle which bore the markings of the Harris County Sheriff's Department. She then peered through her door window and observed the appellant, who asked for her by name. After Chatam opened the door, appellant, who wore a badge and was dressed in full uniform, identified himself as a Sheriff's deputy. Chatam allowed appellant to enter her house. Appellant then told her he had a warrant for her arrest. When Chatam stated that she felt it must be a mistake, appellant called the station to verify the warrant and informed Chatam that there had actually been three warrants issued for her arrest because of traffic tickets. He then told her that he was going to have to take her to jail and place her children in "child welfare."

When Chatam began to cry, appellant patted her on the shoulder and said, "Maybe we could work something out." He told her he would give her a phone number to call in order to take care of the warrants. Chatam walked to her bedroom to find a pen with which to write down the number, and appellant followed her. After writing down the number, she thanked appellant and started to walk toward the front door. When she opened it to allow appellant to leave, appellant pushed it closed. He asked Chatam if he was going to be "compensated for his efforts," and told her to turn around and walk back toward her bedroom. As Chatam walked to the bedroom, appellant pushed her in the back as if to rush her. Once in the bedroom, appellant placed his arms around Chatam's waist and suggested they have sexual intercourse. Chatam attempted to "talk him out of it" by telling him she had

not bathed and was very tired. When appellant suggested they engage in oral sex, she again tried to dissuade him by saying that she had a cold. Appellant asked her to remove her robe; when she refused, appellant grabbed it, causing it to fall to the floor. He then told her to lift up her arms so he could remove her nightshirt; after hesitating for several seconds, Chatam complied. Appellant got undressed, grabbed Chatam's hand, placed it on his sexual organ and instructed her to manually stimulate him, which she proceeded to do.

After several minutes, appellant got dressed, took out a ten dollar bill, and offered it to Chatam. When she said she did not want the money, appellant tossed it on her bed. Chatam followed appellant toward the front door. Before leaving, appellant told her they were "even" now and that he would "get her" if she tried to do anything about the incident. Chatam testified that she was in a state of "shock" and remained very upset after appellant left.

Maurita Howarth, a forensic chemist for the Department of Public Safety, testified that tests she performed on two towels recovered from Chatam's house tested positive for semen and that the seriological characteristics of the semen samples were consistent with appellant's blood type and chemistry.

The defense called several alibi witnesses to the stand. Lieutenant Michael Schottie and Deputies Richard Aguilar, Mike Richards, and Dennis Hoffman each testified that at approximately 11:30 p.m. on the night of January 12, 1987, appellant was called to a disturbance at an apartment complex. Appellant and Deputies Aguilar and Richards left the scene to return to the substation at 12:45 a.m. Each of the alibi witnesses stated that appellant did not leave the station until 1:30 a.m. on January 13, 1987.

Appellant asserts by his first point of error that the trial court erred in overruling his motion to dismiss the indictment on the grounds that the official oppression

statute upon which his conviction is based is unconstitutionally vague.

Tex.Penal Code Ann. § 39.02 (Vernon 1989) provides in part:

(a) A public servant acting under color of his office or employment commits an offense if he:

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;

■ Appellant specifically argues that the term "mistreatment:" is so vague that persons of reasonable intelligence could disagree to its "meaning and application." We addressed this identical question in *Zuniga v. State*, 664 S.W.2d 366, 371 (Tex. App.—Corpus Christi 1983, no pet.), and held that the statute proscribes only "unlawful" mistreatment. Because unlawful conduct is defined in Tex.Penal Code Ann. § 1.07(a)(36) (Vernon 1974) as conduct which is "criminal or tortious or both," the statute is not unconstitutionally vague. Since this qualification of the term "mistreatment" to mean unlawful mistreatment places the definition of the offense within the realm of common understanding, section 39.02 is not void for vagueness. *Id.* Point one is overruled.

■ Appellant contends by his second point that the trial court erred in denying his motion to dismiss the indictment because the instrument failed to allege that the mistreatment committed by appellant was unlawful and therefore did not state an offense.

The indictment charges that on the date in question, appellant:

did then and there unlawfully while the Defendant was a public servant, namely, a peace officer employed by the Sheriff's Department of Harris County, Texas, and while acting under color of his office and employment, namely, by taking advantage of his actual and purported official capacity, intentionally subject Denise Cannon–Chatam, hereafter styled the Complainant, to mistreatment by causing the Complainant to place her hand on his (Defendant's) penis, knowing that his (Defendant's) conduct was unlawful.

In order to commit the offense, one must know that the alleged "mistreatment" (apart from the offense of official oppression) is unlawful. In order for one to know this, the mistreatment must in fact be unlawful. Thus, by alleging appellant knew his conduct was unlawful, the indictment properly averred that the treatment was unlawful. Point of error two is overruled.

Point of error three is closely related and maintains that the failure of the indictment to allege facts casting the mistreatment as unlawful renders it fundamentally defective.

Appellant contends that without an allegation that the alleged touching was offensive to Chatam, i.e., that the touching constituted an assault under Tex.Penal Code Ann. § 22.01(a)(3) (Vernon 1989),[1] or some further allegation concerning consent or the public nature of the place where the touching occurred, the alleged mistreatment is not unlawful and does not constitute an act of official oppression. The issue presented is whether it is necessary to allege sufficient facts to show the mistreatment to be unlawful when such mistreatment is an element of the crime of official oppression.

■ Generally, an indictment which tracks the statutory language proscribing certain conduct is sufficient to charge a criminal offense and need not allege any additional facts. *Clark v. State*, 577 S.W.2d 238, 240 (Tex.Crim.App.1979). The indictment in the instant case meets this requirement. The only exception to the rule set forth in *Clark* arises when the manner or means of doing an alleged act makes otherwise innocent conduct a criminal offense; in such a case, additional facts showing the offensive manner or means must be alleged. *Posey v. State*, 545 S.W.2d 162, 163 (Tex.Crim.App.1977).

---

1. Section 22.01(a)(3) provides a person commits an assault if he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."

■ Appellant argues that the *Posey* exception applies here because the alleged conduct of "causing the Complainant to place her hand on [appellant's] penis" is an innocent act in the absence of an allegation of the complainant's lack of consent. Does the failure to allege facts sufficient to establish the mistreatment unlawful render the indictment fundamentally defective, given that no objection was made to the indictment on this basis? The "conduct" which the indictment alleges to be an act of official oppression consists of more than the mere alleged touching committed by the appellant; it consists of the touching with knowledge that the touching was unlawful. Absent a motion to quash, the failure to allege facts that give rise to the conclusion of the unlawfulness of the mistreatment is not fatal. The allegation of unlawfulness is sufficient to invest the court with jurisdiction by including the elements of the crime within the indictment. We overrule point three.

■ Appellant argues by his fourth point that the trial court erred in overruling his motion to dismiss the indictment because the instrument "failed to allege in what manner the appellant took advantage of his actual or purported official capacity." However, section 39.02 only requires a showing that the accused was "acting under the color of his office or employment" when he committed the alleged offense; it does not require proof of how the accused took advantage of his official capacity. Since the indictment adequately tracked the language of each essential element of official oppression as set forth in the statute, the instrument was not defective. *Clark*, 577 S.W.2d at 240. Point four is overruled.

■ By his seventh point, appellant asserts the trial court erred in failing to permit him to impeach Chatam's credibility by introducing evidence that she previously falsely accused another person of sexual assault. Defense counsel explained to the trial court that he wished to elicit from his cross-examination of Chatam evidence that she had previously claimed to have been abducted and sexually assaulted three to four times by another assailant in November of 1986. He further wished to develop that a subsequent investigation and vaginal examination of Chatam revealed no evidence of rape. The trial court disallowed the proffer of evidence.

Although a defendant is allowed a broad range in contesting the credibility of the witness, we believe the evidence was properly refused. That there was no physical evidence of a prior rape does not mean that the rape did not occur, nor does it mean that the complainant lied and falsely accused another.

In addition, our examination of the record reveals that defense counsel was able to elicit the same evidence without objection during cross-examination of Detective Anita Watson:

Q. Just to refresh your recollection yesterday, we were talking about the credibility of Ms. Denise Chatam and certain things that you did in evaluating or could have done in evaluating her testimony or her credibility, and we talked briefly about an incident that she alleged occurred in October or November of 1986; you recall that?

A. Yes, sir.

Q. You talked about some of the things that you did to see if those allegations were true and accurate and so as to help you evaluate or consider her credibility?

A. Yes, sir.

\* \* \* \* \* \*

Q. Matter of fact didn't you call out there to California and talk to what was a District Attorney?

A. Assistant District Attorney, yes, sir.

\* \* \* \* \* \*

Q. Okay. From that telephone conversation with that Assistant District Attorney out there you formed the opinion, you had the belief that there was no semen found in that particular transaction; did you not?

A. No, not in L.A.

\* \* \* \* \* \*

Q. Okay. Now, when we are talking about this, this is concerning your investigation of this particular case and your evaluation and your opinion as to the credibility of Ms. Chatam. Was there anything else in your investigation that would suggest to you that she was capable of filing a false report concerning rape?

A. I don't recall anything stating, as far as whether or not she filed rape or not.

Q. Or that she's capable of it or would do something like that?

A. Yes, she did. She did in the past.

Q. Was there anything that perhaps made you suspicious that she would falsely accuse someone of rape?

A. Yes.

This was a trial to the court without aid of jury. If the import of allegedly improperly excluded evidence is conveyed to the trier of fact through other evidence, no harmful error is shown. *Johnson v. State*, 583 S.W.2d 399, 404 (Tex.Crim.App.1979); *Blalock v. State*, 728 S.W.2d 135, 137 (Tex.App. —Houston [14th Dist.] 1987, pet. ref'd); *Waggoner v. State*, 649 S.W.2d 667, 669 (Tex.App.—Corpus Christi 1983, no pet.). We overrule point of error seven.

■ Appellant's sixth point states the trial court erred in overruling appellant's motion to suppress the results of certain scientific tests performed by the State on two towels recovered from Chatam's residence. Point eight asserts the court erred in allowing the State, by way of Detective Watson's testimony, to bolster Chatam's out-of-court identification of appellant. Even assuming *arguendo* that appellant is correct, it is well settled that, in a trial before the court, the trial court is presumed to have disregarded any inadmissible evidence. *Tolbert v. State*, 743 S.W.2d 631, 633 (Tex.Crim.App.1988). Since appellant has failed to meet his burden of showing that the trial court relied on or considered the complained-of evidence in reaching its verdict, we overrule points six and eight. *See id.* at 633–34.

By his fifth and ninth points of error, appellant claims the evidence is insufficient to support his conviction because 1) he was not acting in his official capacity as a peace officer since the record shows that the alleged mistreatment occurred only after appellant decided not to arrest Chatam; and 2) his alibi witnesses were unimpeached. In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989).

■ The record reflects that appellant arrived at Chatam's house in full uniform in order to execute an arrest warrant. The fact that he told Chatam that they might be able to "figure out something" in order to take care of the warrant does not indicate that he ceased acting under the "color of his office or employment" as a Sheriff's Deputy when he subsequently performed the alleged act of mistreatment. On the contrary, his request to be "compensated for his efforts" suggests that he intended to remain in his official capacity during the commission of the oppressive act.

The State was also required to prove under section 39.02 that appellant intentionally acted in the manner alleged with knowledge that his conduct was unlawful. Chatam testified that appellant "grabbed" her hand and placed it on his penis, thereby clearly establishing intent. She also stated that appellant gave her a ten dollar bill after the incident, which would indicate that appellant realized that Chatam had not touched him voluntarily or consensually. Appellant's knowledge of the unlawfulness of his actions was further suggested by his threat to "get" Chatam if she reported him. Semen stains found on washcloths delivered by the complainant were consistent with appellant's blood and semen enzyme type. A similar consistency was found between pubic hair samples. In regard to appellant's assertion regarding the "unimpeached" evidence elicited from his alibi witnesses, we note that the trial court, as sole trier of fact and judge of the credibility of witnesses, was entitled to believe

Chatam's testimony and disbelieve that of the defense witnesses. *Bellah v. State,* 653 S.W.2d 795, 796 (Tex.Crim.App.1983). Finding the evidence sufficient to support the conviction, we overrule points of error five and nine.

The judgment of the trial court is AFFIRMED.