Alberto Barrera HINOJOSA, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–87–228 CR.

Court of Appeals of Texas, Beaumont.

Oct. 18, 1989.

Discretionary Review Refused (Appellant) Jan. 24, 1990.
Discretionary Review Refused (State) Jan. 24, 1990.

Donald M. Brown, Conroe, for appellant.

Thomas D. Glenn, Conroe, for appellee.

Before DIES, C.J., and
BROOKSHIRE and BURGESS, JJ.

OPINION

BURGESS, Justice.

A jury found appellant guilty of delivery of more than five pounds but less than fifty pounds of marijuana by actual transfer and assessed punishment at fifteen years' confinement in the Texas Department of Corrections and a $5,000 fine. Appellant has perfected this appeal.

By his second and third points of error, appellant urges the state's attorney exercised peremptory challenges on the basis of race to exclude black prospective jurors in violation of appellant's rights as a member of an identifiable racial group, and his right to a jury comprised of a fair cross-section of the community under the sixth and fourteenth amendments of the United States Constitution. Appellant urges three distinct sources of authority to support these contentions.

■ First, appellant argues that even though he is a non-black hispanic person, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) allows him to show systematic exclusion of blacks from jury service by showing the prosecutor's peremptory strikes in this case were racially motivated. In order to invoke the protections set forth in *Batson*, a defendant must establish that:

1. he is a member of a cognizable racial group;

2. the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race; and

3. the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to excuse the veniremen on account of their race.

*Keeton v. State*, 724 S.W.2d 58, 65 (Tex. Crim.App.1987). The record clearly reveals that appellant failed to meet the second of these requirements, because he is hispanic and his only complaint is blacks were struck for reasons of race. Therefore, the protections set out in *Batson* are not applicable to this case.

Appellant also argues a Texas statute affords him protections similar to those set out in *Batson*, regardless of whether the venire members peremptorily struck by the prosecutor for racial reasons were of the same racial group as appellant. *TEX. CODE CRIM.PROC.ANN. art. 35.261* (Vernon 1989). Article 35.261 reads as follows:

### Art. 35.261. Peremptory Challenges Based on Race Prohibited.

(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impaneled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

However, we need not decide whether article 35.261 requires a defendant to show the prosecutor used peremptory challenges to strike members of the defendant's race from the venire. The statute clearly requires a defendant who wishes to complain of racially motivated peremptory strikes to request that the trial court dismiss the array. This request must be made after the parties have delivered their strike lists

to the clerk and before the court has impaneled the jury.

In the present case, appellant requested, prior to the commencement of voir dire, the trial court prohibit the prosecutor from using peremptories to exclude minority venire members for reasons of their race. The trial court stated it felt such use of peremptories was improper, but would take no action on the request until after the parties had made their peremptory strikes. After the parties delivered their strike lists to the clerk, the trial court reconsidered the appellant's request. The court ascertained appellant was a hispanic person and he was complaining the prosecutor struck black venire members because of their race. The trial court heard argument from both parties and determined *Batson* did not apply. Appellant never mentioned any other authority than *Batson v. Kentucky, supra,* during these arguments. The trial court clearly stated the reason he decided *Batson* was inapplicable was appellant was complaining the prosecutor struck venire members of an identifiable racial group to which appellant did not belong. Appellant still did not urge such strikes by the prosecutor violated any right other than those protected under the United States Constitution under authority of *Batson v. Kentucky, supra.*

The trial judge then seated the jury according to all the peremptory challenges and challenges for cause exercised by the parties. The jury so selected was sworn without objection from appellant, at no time prior to the impaneling of the jury did appellant request that the trial court dismiss the array as required by article 35.261. Therefore, we hold appellant failed to properly preserve any error the trial court may have committed with regard to the peremptory challenges exercised by the prosecutor which may have been based upon the race of the venire members. Therefore, appellant's second and third point of error are overruled.

By his first point of error appellant urges that the trial court erred in excluding evidence of the true criminal record of a state's witness after the state's attorney

deliberately planted a false impression in the minds of the jurors that he had no criminal record. Arthur Narvaiz, appellant's co-defendant, testified T.J. Vaughn asked him to obtain fifty pounds of marijuana. Narvaiz testified he contacted appellant for the purpose of obtaining the marijuana. Narvaiz testified appellant later told him the marijuana would be available for transfer at a certain address in Conroe on the evening of April 20, 1987. The address was shown to be the home of Israel Gomez, another co-defendant. Narvaiz stated appellant agreed to pay him fifty dollars per pound transferred as compensation for his part in the transaction. Narvaiz testified that when he, Vaughn, and I.E. Jordan went to Gomez's house on the night of April 20, 1987, appellant and Gomez took them to Gomez' garage where three large bales of marijuana were located. He testified appellant discussed the terms of the deal with Jordan, took the money Jordan offered and made the bales available for Jordan to remove by truck.

During direct examination of Narvaiz, the prosecutor asked the following question:

> [PROSECUTOR]: Prior to this offense had you ever been convicted in this state or any other state of a felony offense or an offense involving moral turpitude?

Narvaiz answered in the negative. During cross-examination appellant's attorney attempted to question Narvaiz concerning his previous arrest and conviction in federal court for the offense of unlawfully transporting illegal aliens into the United States. The trial court refused to allow such cross-examination because Narvaiz testified he had successfully completed the probationary sentence the federal court had assessed. The prosecutor stipulated that the offense of which Narvaiz had been found guilty was a felony. While the state is correct in asserting the witness' prior conviction was not admissible under *TEX.R. CRIM.EVID. 609*, the very authority the state cites acknowledges an exception to rule 609 which is applicable to this case. *See Prescott v. State*, 744 S.W.2d 128 (Tex.

Crim.App.1988). In that case the court of criminal appeals stated:

> An exception to this general rule arises when a witness, during direct examination, leaves a false impression as to the extent of either his prior (1) arrests (2) convictions (3) charges or (4) "trouble" with the police.

It is, therefore, still the law that where such a false impression as to a witness' criminal history is given to the jury on direct examination, the opposing party is entitled to elicit testimony from the witness which will correct the false impression. This exception to the inadmissibility for impeachment purposes of prior convictions resulting in probated sentences which have been successfully completed was applied in *Trippell v. State*, 535 S.W.2d 178 (Tex.Crim.App.1976). In *Trippell*, the witness portrayed himself on direct examination as a law-abiding citizen attempting to help police out of a sense of civic duty. The court of criminal appeals found the trial court committed reversible error in excluding evidence showing the witness had previously been convicted of an assault on a woman even though the witness had successfully completed his probated sentence for such offense.

In the present case, the state argues since Narvaiz had no prior conviction ordinarily usable for impeachment, his negative answer to the prosecutor's question did not "open the door" to evidence of the prior conviction. We find this argument to be entirely without merit. The average juror is unaware of the technicalities of the rules of evidence. Therefore, Narvaiz' testimony left the impression he had *never been* convicted of a felony. This impression was patently false. Furthermore, the prosecutor did not ask whether Narvaiz "had any prior convictions"; he asked whether Narvaiz "had ever been convicted." While we believe the question, in either form, would lay a false impression with a lay jury when answered in the negative, the form of the question actually used could lay a false impression even if the jury was made up of experienced criminal attorneys. Therefore, the trial court erred in

excluding the cross-examination of Narvaiz concerning his prior conviction.

■ Having found error, we must determine whether the error was harmless beyond a reasonable doubt. *See TEX.R. APP.P. 81(b)(2)*. Appellant testified he only participated in the delivery of the marijuana as an interpreter between Gomez who spoke little English, and Officer Jordan who spoke no Spanish. Appellant's testimony clearly establishes he facilitated the transfer of the marijuana. It also shows he knew the transaction he was helping to conduct was the sale of over 46 pounds of marijuana for a large amount of cash. The charge of the court in the guilt-innocence phase instructed the jury on the law of parties. It also authorized a conviction if the jury found appellant was a party to the offense. We find appellant's own testimony amounted to a judicial confession that he was a party to the offense for which he was charged. The prosecutor emphasized in his closing argument appellant's own testimony proved he was a party to the offense. The state introduced little evidence that appellant's own conduct constituted the offense. Almost all of this evidence came in through the testimony of Narvaiz, who the jury knew to be testifying in return for a plea bargained sentence of five years in prison. Taking this weakness in the state's case into account, as well as the obviously strong impact of appellant's own testimony, we conclude the jury did not weigh Narvaiz' credibility at all in finding appellant guilty. Therefore, we find, beyond a reasonable doubt, that the error concerning limitation of proper cross-examination of Narvaiz made no contribution to appellant's conviction.

■ In the punishment phase, appellant's attorney argued the jury should not assess more punishment to appellant than the prosecutor agreed to give Narvaiz, that is five years. The prosecutor responded by arguing he had to plea bargain with one co-defendant in order to be able to convict others. He also argued appellant was more culpable than Narvaiz because he was "the bigger person." The prosecutor argued Narvaiz was only getting $50 per pound or about $2,500 out of the deal while appellant's profits would be larger, because his involvement was greater. Therefore, the prosecutor was definitely asking the jury to rely upon the credibility of Narvaiz, the only source of evidence showing Narvaiz was only supposed to get $50 per pound from the deal. The prosecutor asked the jury to consider a punishment of between twenty-five and fifty years for appellant.

Since the prosecutor asked the jury to give greater punishment than Narvaiz was to get partly because of evidence supplied only through Narvaiz, we believe the jury may have done so. This would have called upon the jury to consider the credibility of Narvaiz. The error found in point number one deprived appellant of his right to introduce proper evidence to impeach the credibility of Narvaiz. Therefore, we cannot say, beyond a reasonable doubt that the error made no contribution to the punishment assessed. Appellant's first point of error is sustained.

■ Appellant's fourth point of error urges the trial court erred in the punishment phase by charging the jury on the law of good conduct and parole pursuant to *TEX.CODE CRIM.PROC.ANN. art. 37.-07(4)(b)* (Vernon Supp.1989). We find the statutory parole law and good conduct instruction was given. The court of criminal appeals has held it is fundamental error to instruct the jury in accordance with article 37.07(4)(b). *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988) (opinion on rehearing). Therefore, the trial court erred in so instructing the jury.

We must now determine whether beyond a reasonable doubt the error made no contribution to the punishment assessed. *TEX.R.APP.P. 81(b)(2)*. In *Rose*, the court of criminal appeals relied on the following factors in making such determination:

(1) the giving of a curative instruction;

(2) the prior criminal history of the defendant; and

(3) the facts of the case.

*Rose* 752 S.W.2d at 554. We do not believe this is an exclusive list, and will also consid-

er other factors which we believe to be applicable in this particular case.

■ The state asserts a "curative instruction" was given in this case, and points out the language of the statutory instruction itself as being "curative." We do not believe this statutory language constitutes a "curative instruction" under *Rose*. The instruction cited in *Rose* as being "curative" told the jury to totally disregard parole. The language of the statute relied upon by the state in this case tells the jury it may consider the existence of parole and good time credit in assessing punishment. We find this to be a significant difference. Furthermore, if the statutory instruction contained its own cure, it would seem that each time the statutory instruction was given in full, the error would be harmless. Certainly, it would not be logical to hold that such an instruction violated a defendant's right to a fundamentally fair trial as was held by the court of criminal appeals in *Rose*. We, therefore, find that no "curative" instruction was given in this case.

Appellant admitted he had been convicted for driving while intoxicated in 1974. The state introduced no evidence of any prior criminal history of the appellant. Such a criminal history could hardly have much bearing on the jury's punishment decision for an offense committed thirteen years after the D.W.I. conviction.

As to the facts and circumstances of the present offense, the state urges the sale of over forty-six pounds of marijuana is extremely serious. We agree entirely. However, there were other facts that may have had an impact upon the sentence assessed in this case. The state argued, at the punishment phase, that appellant deserved more punishment than Narvaiz because he was more culpable and stood to gain more profit from the transaction. The defense urged appellant should receive no more punishment than Narvaiz, whose plea bargain was for five years' confinement. The prosecutor had even asked Narvaiz whether their plea bargain agreement was that appellant would have five years "to do." In light of the very language of the statu-

tory instruction, we believe there is a reasonable possibility the jury assessed appellant fifteen years' confinement because they believe this would tend to ensure appellant stayed in prison for five years as they had been informed Narvaiz was "to do." Therefore, we cannot hold the giving of the parole law and good conduct time instruction made no contribution to the punishment assessed. Appellant's fourth point of error is sustained. The judgment of the trial court is reversed and remanded for a new trial on punishment only.

REVERSED AND REMANDED FOR NEW TRIAL ON PUNISHMENT.

WALKER, C.J., not sitting.

BROOKSHIRE, Justice, dissenting.

I dissent respectfully. The Court correctly reasons that the Appellant's own evidence amounted to and was actually equal to a judicial confession and that he, himself, was an active party to the offense for which he was charged and tried. The prosecutor's argument, in my opinion, did not improperly urge the jury "to rely upon the credibility of Narvaiz". This is the holding of the Court which is one of the bases for the reversal of the judgment on punishment. The prosecutor argued to the jury that an assessment of punishment between 25 and 50 years for the Appellant would be appropriate. The prosecutor's summation was not error; the jury assessed 15 years.

The Court also reverses the judgment on punishment finding that there was error on the part of the district court in charging the jury on the law of good conduct and parole. The court at the time necessarily charged in accordance with *TEX.CODE CRIM.PROC.ANN. art. 37.07(4)(b)* (Vernon Supp.1989).

*TEX.R.APP.P. 81(b)(2)* mandates that the appellate court, exercising, I submit, its own prudent judgment, shall determine beyond a reasonable doubt that the error complained of made no contribution to the conviction or to the punishment.

The majority cites *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988) (Opinion on rehearing). In *Rose*, the Court con-

ceded that it was unable to know the process the jury underwent in assessing the punishment. Nevertheless, the Court did not reverse the *Rose* case. *Rose* did not obtain a new trial on punishment. The Court of Criminal Appeals apparently based its decision upon three following important factors: (1) the giving of a curative instruction; (2) the prior criminal record of the accused; and (3) the facts of the instant case. The three are probably not necessarily exhaustive or definitive. *See Evans v. State*, 760 S.W.2d 760 (Tex.App.—Beaumont 1988, pet. ref'd).

Intermediate appellate courts should realize that a modern, enlightened jury is willing to conscientiously follow and adhere to the instructions given by the district judge. *See Rose II.*

The facts of the instant case are grievous. The quantity of the contraband involved was definitely significant. The value on the street of the large number of pounds of the illegal narcotic was also of importance. The range of punishment permitted an upper limit of 99 years confinement. The jury awarded much less than the State demanded. *Coons v. State*, 758 S.W.2d 330 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd); *Pope v. State*, 756 S.W.2d 401 (Tex.App.—Dallas 1988, pet. ref'd).

The prosecutor did not make reference to parole in his final argument. *Rodriguez v. State*, 757 S.W.2d 420 (Tex.App.—Dallas 1988, no pet.). There was a sale of over 46 pounds of marihuana which the majority concedes is an extremely serious criminal offense.

The majority writes "... we believe there is a reasonable possibility the jury assessed appellant fifteen years' confinement because they believe this would tend to ensure appellant stayed in prison for five years as they had been informed Narvaiz was 'to do'."

There is nothing in the record to indicate upon what the jury assessed the fifteen years' confinement. Nor is there any indication to the effect that the jury actually believed that Narvaiz was going to have to serve the five full years on a one day for one day basis. Perhaps the majority in dealing with *TEX.CODE CRIM.PROC. ANN. art. 37.07(4)(b)* (Vernon Supp.1989) have become majoritarians.

I think the rationale and holdings of *Rose, supra,* under this record, are compellingly persuasive that the parole law instruction did not contribute to the punishment assessed. Through collegiality at the local level, in Huntsville at regional continuing education seminars and at Statewide judicial conferences, a likely consensus has been established that the genesis of *Rule 81(b)(2)* is *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967). A more recent Supreme Court decision involving the State of Texas, probably of equal importance, is *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). *Chapman* involved one death sentence and a life sentence. *At the time the California State Constitution provided that in criminal cases whether the defendant testified or not his failure to explain or deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel and may be considered by the jury.*

There were two petitioners in the *Chapman* case, Ruth Chapman and Thomas Teale. Neither one chose to testify. The State's attorney prosecuting them took full advantage of his power under the then California Constitution to comment upon their failure to testify, filling his arguments to the jury from start to finish with many references to their silence and inferences of their guilt resulting from that silence. Indeed, the trial court charged the jury that the factfinders could draw adverse inferences from the petitioners' failure to mount the stand and testify. The U.S. Supreme Court held that California's Constitutional provision and practice were invalid on the ground that the same put a penalty on a person's basic *right not to be compelled to be a witness against himself* —a valuable and precious right guaranteed by the Fifth Amendment to the United States Constitution which was made applicable to California and the other states by

the Fourteenth Amendment to the Constitution. *See Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Note that a death sentence was involved and a United States constitutional, personal right was violated. The death of a human being was imminent and a clear, basic, constitutional right as set out in the Federal Bill of Rights was violated. That right was of a personal nature; it was more basic and personal than the separation of powers doctrine.

In *Satterwhite, supra,* the jury assessed death. Justice O'Connor characterized the situation as literally a life or death matter which the defendant should not be required to face without the guiding hand of counsel. Satterwhite had been ordered examined by the only medical doctor and psychiatrist who testified, being Dr. James P. Grigson. No notice was given to Satterwhite's attorney of record of the examination by Dr. Grigson. Dr. Grigson reported that Satterwhite had a severe, anti-social personality disorder and was extremely dangerous and would commit future acts of violence. Hence, there was a violation of the Sixth Amendment to the Federal Constitution. The right to counsel is personal to the accused.

In Mr. Hinojosa's case, the death penalty is not involved, nor is the Fifth Amendment nor the Sixth Amendment. In *Satterwhite, supra,* the Court reached a conclusion that not all constitutional violations amounted to reversible error. In *Chapman, supra,* Mr. Justice Black referred to *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) wherein the Court stated the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the *conviction;* but the Court reiterated that trial errors which violate constitutional guarantees do not necessarily require a reversal.

Additionally, the facts of the instant case reinforce and justify the sentence assessed by the jury. I would respectfully submit that a type of constitutional error dealt with in *Rose* —being a violation of the separation of powers doctrine—is not personal to Hinojosa. Whereas under *Chapman, supra,* and *Satterwhite, supra,* there were violations of certain basic, personal, constitutional guarantees directly affecting these defendants.

It appears that *TEX.R.APP.P. 81(b)(2)* has not been applied consistently in every type of case where error has been discovered. For example, error in the State's summation or argument did not lead to a reversal. *Wilford v. State,* 739 S.W.2d 854 (Tex. Crim.App.1987). In *Wilford* two erroneous arguments were made. In *Tolbert v. State,* 743 S.W.2d 631 (Tex.Crim.App.1988) the court erroneously admitted a videotape. The videotape had been taken in violation of the Appellant's personal, constitutional right of confrontation under the Sixth Amendment to the United States Constitution. The taking of the videotape in question was also deemed a violation of the Appellant's Texas guaranteed right of confrontation under Article I, section 10 of the Texas Constitution. The videotape violated personal, basic, guaranteed, constitutional rights. Nevertheless, the Court of Criminal Appeals affirmed the conviction stating that a well settled rule in a bench trial is that a presumption is entertained that the trial judge disregarded any inadmissible evidence introduced at trial. Hence, these grave violations of basic, guaranteed, personal, constitutional rights did not automatically call for a reversal. *TEX.R.APP.P. 81(b)(2)* was not invoked. I make no quarrel with *Tolbert, supra; Wilford, supra.* But these affirmances demonstrated that *Rule 81(b)(2)* is not invariably invoked.

Therefore, I would respectfully submit that the Court of Criminal Appeals ought to rewrite *TEX.R.APP.P. 81(b)(2)* to give the courts of appeals more detailed guidelines. The Court of Criminal Appeals could in a fresh, definitive opinion instruct us as to where the burden lies under *Rule 81(b)(2)* and to which types of cases it will be applied uniformly.

I submit that the curative instruction given in *Rose II* is not meaningfully different from the curative instruction given in *Hinojosa.* The High Court in *Rose II* concluded that generally there was a presump-

tion that the jury follows the instructions given by the trial judge and in the manner the instruction is given. *See Cobarrubio v. State,* 675 S.W.2d 749 (Tex.Crim.App.1983). The curative instruction in *Rose II* instructed the jury not to discuss among themselves how long the defendant will be required to serve. In *Hinojosa* the jury was instructed not even to consider, much less discuss, the extent to which good conduct time may be awarded to or forfeited by this particular defendant. This curative instruction was also the judge's last words in his charge. *Rose II* received the maximum sentence for aggravated robbery.

Since the Court reverses the judgment and remands the cause for a new trial on punishment, I respectfully dissent.