**Carl Wesley DEASON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 989–87.**

Court of Criminal Appeals of Texas,
En Banc.

Feb. 28, 1990.

---

Terry G. Collins, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Frances M. Northcutt, Kathlyn Giannaula and Vic Wisner, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Austin, for State.

## OPINION ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

The appellant was found guilty of indecency with a child by the trial court and assessed a punishment of five years in the Texas Department of Corrections. V.T. C.A. Penal Code, § 21.11.[1]

The First Court of Appeals reversed the appellant's conviction and remanded the case to the trial court for a new trial in an unpublished opinion. *Deason v. State*, No. 01–86–00716–CR, 1987 WL 17278 (Tex.App. —Houston [1st] 1987), *pet. granted*. The court of appeals' reversal was premised on the admittance of a videotaped interview of the complainant in violation of our holding in *Long v. State*, 742 S.W.2d 302 (Tex.Cr. App.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988). We granted both the State's and appellant's petitions for discretionary review challenging the disposition of this case by the court of appeals.

The State now contends the *Long* error was not reversible in that the trial was to the judge, and the videotape was merely cumulative of other evidence presented. The appellant asserts, however, that the

court of appeals erred by concluding that the evidence is sufficient to permit a rational trier of fact to find that the appellant touched the genitals of the complainant.

The indictment upon which the appellant was charged read as follows:

did then and there unlawfully with intent to arouse the sexual desire of the Defendant have sexual contact *by touching* the genitals of D—— L——, . . . a child under the age of seventeen and not his spouse. [emphasis added]

Initially, we note that the court of appeals' determination that the videotape was admitted in violation of this Court's decision in *Long, supra*, remains undisturbed. We will first address the State's contention that the error in this instance was not reversible in that the improperly admitted videotape was merely cumulative of other evidence presented and was thus harmless.

### I.

The appellant was tried before the court, a jury having been waived. In *Tolbert v. State*, 743 S.W.2d 631 (Tex.Cr.App. 1988), a plurality of this Court held that in a trial before the court there is a presumption that the trial court as trier of fact disregarded any inadmissible evidence admitted at trial. *Id.*, at 633. Accordingly, we note that in a cause tried before the court rather than a jury, the fact that inadmissible evidence was received does not automatically call for a reversal.

As we stated in *Tolbert, supra*:

The effect of the aforesaid rule is that appellant carries the burden of proving that the trial court relied upon or even considered the inadmissible evidence in reaching his verdict or determining punishment. *Tamminen v. State*, supra [653 S.W.2d 799 (Tex.Cr.App.1983) ]; *Angelle v. State*, 571 S.W.2d 301 (Tex.Cr. App.1978). In *Arnold v. State*, supra

---

1. V.T.C.A. Penal Code, § 21.11 reads as follows:
   (a) A person commits an offense if, with a child younger than 17 years and not his spouse, whether the child is of the same or opposite sex, he:
   (1) engages in sexual contact with the child; or

(2) exposes his anus or any part of his genitals, knowing the child is present, with intent to arouse or gratify the sexual desire of any person.

[161 Tex.Cr.R. 344, 277 S.W.2d 106 (1955)], the Court approved the following test to be used to determine the question presented:

'When a cause is tried before the court and there is nothing to show that the judgment was based upon the inadmissible evidence (such as by findings or conclusions of fact or law) it will be presumed that the trial judge disregarded incompetent evidence admitted at the trial and the judgment will not be reversed on appeal on the ground of the admission of incompetent evidence *if sufficient proper evidence was admitted to sustain the judgment.* Id. 277 S.W.2d at 107. [emphasis added]

*Id.*

■ In other words, even if improperly admitted evidence is considered by the trial court, a reversal of a conviction will not be necessary if other admissible sufficient evidence is admitted to sustain the judgment.

The appellant was the driver of a private school bus which delivered and picked up children at East Houston Elementary School. The mother of D— L—, testified that on May 1, 1985, D— L— was seven years old and attended the second grade at East Houston Elementary School. D— L— rode a private bus to school which was driven by the appellant. On May 1, 1985, D— L— came directly to her mother after getting home from school and stated that the appellant "is not Christian." When the mother asked D— L— why she said this, D— L— replied:

On our way to school this morning, he stopped the van. And he led the children off the van to pick berries. I was the only one who remained inside. And he tried ... to touch my peepee ...

The mother further testified that she then asked D— L—, "Did he do anything to you?" D— L— replied:

No, because Alberto didn't want to pick berries up and got in. And when he noticed that Alberto was on his way to get in the van, he got away and sat down real fast.

The mother thereafter testified that D— L— refers to her vagina as her "peepee." She further explained that Alberto is a cousin and neighbor who also rode the bus.

D— L— testified that she was eight years old at the time of her testimony. During the previous school year she was in the second grade at East Houston Elementary School and rode to school during May, 1985 in a private bus driven by the appellant. One day in May the appellant stopped the bus on the way to school and told the other children on the bus "to go out and pick some berries." D— L— also testified that she suffered a small cut on her leg after she left home for school that morning and she told the appellant about it. He instructed her to go to the back of the bus and lie down.

During her trial testimony D— L— did not describe anything that happened to her after lying down in the back of the bus. She testified that once she laid down, it was only about two minutes until her cousin, Alberto, got back on the bus. Once he reentered the bus, the appellant sat in the driver's seat and summoned the other children back onto the bus and delivered them to school. D— L— did testify that when she got home from school that day she told her mother that the appellant "had told me to go lie down on the back seat and he pulled down my dress and pushed my panties to the other side and tried to touch it."

Yolanda Davis, a Houston Police Department Officer assigned to the Juvenile Division, testified that she took a videotaped statement from D— L— on May 3, 1985. The videotape, State's Exhibit 4, was admitted into evidence over the appellant's objections and was viewed by the trial judge.

The record discloses that D— L— spoke in Spanish during the videotaped interview and an interpreter was used to interpret her statements when the trial judge and attorneys viewed the videotape during the trial. At the conclusion of the trial, the trial judge deferred any decision as to the issue of guilt or innocence. The court reporter and interpreter met together after the trial to view the videotape again

and prepare a transcript in English. When the case reconvened, this transcript was introduced into evidence for the record by agreement of all parties and the court. This transcript appears in the appellate record.

The transcript of the videotaped interview indicates that D__ L__ gave the following answers on May 3, 1985, to questions by Officer Davis:

Q. Now, why are you here today?

A. Because Mr. Deason lifted my dress and he pulled my panty to one side and he was going to touch me.

Q. He was going to touch you? Where was he going to touch you?

A. On my peepee.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. On Springdale? And what did he do?

A. He picked up my dress and then he pulled my panty to one side and he was going to touch my peepee.

The transcript further discloses the following questions:

Q. How come nobody saw? Who was on the bus?

A. No one. Only Mr. Deason. He told all the children to get off to pick up berries. And all the children got off and then he told me to go to the back. To the back of the bus, and then he told me to go to the rear of the bus. He told me to lie down and he picked up my dress and then he pulled my panty to one side. Then he was going to touch my peepee.

Q. Okay, nobody saw what he did? What Mr. Deason did? Nobody saw it?

A. No.

Q. And then what happened after that?

A. Nothing. Then Mr. Deason told the children to get back on the bus. Except that there was one little boy that came back on the bus. So then, Mr. Deason stopped doing that. And then he went back to driving.

The State argues that the record affirmatively indicates that the trial judge did not consider the videotape testimony. Prior to making a finding on guilt-innocence, the trial judge was urged to review the English translated transcript of the videotape interview which had been conducted in Spanish. Defense counsel continually maintained that any of the appellant's efforts to pull the complainant's panties aside did not involve "a touching." The following then transpired:

THE COURT: But back to, there is not an Exhibit No. 1?

MR. COLLINS [Defense counsel]: Yes, sir. That's Defendant's Exhibit No. 1.

THE COURT: All right. This is the ranscript [sic] of the direct testimony during the trial itself.

MR. COLLINS: Yes, sir.

THE COURT: *It's admissible prior to a finding of guilt.*

MR. COLLINS: Then I would conclude, Your Honor, and ask the Court to recall the testimony, previous motions for instructed verdict at this time on the purpose of guilt or innocence. We would at this time ask the Court to enter a finding of not guilty.

MR. COFFEE [Prosecutor]: I believe the State rested back on the 12th of June 1986, Judge, and we would reoffer all the evidence and the documents that were admitted into evidence before the court on the 23rd of June, 1986 as well as arguments. They were made by Mr. Wisneer.

And I particularly call the Court's attention to the case, Cissick [sic] vs. State, 874 [sic] SW2d 558, and urge the court to find the defendant guilty of the offenses because I think the evidence shows—

THE COURT: Let me see that again. I remember seeing it at that time but—

MR. COFFEE: The State would urge the Court to find the defendant guilty of the offense of indecency with a child because it shows beyond a reasonable doubt the defendant committed the offenses for which he has been charged with.

THE COURT: Okay.

MR. COLLINS: Judge, you might recall the argument I made in regard to that case [*Resnick v. State*, 574 S.W.2d 558 (Tex.Cr.App.1978)].

THE COURT: I know; [sic] but in here if this is the only evidence that's in this

transcript of her testimony, she never says he touched her.

MR. COFFEE: But we—

THE COURT: He moved her panties to one side, the side. Is that what it's based upon?

MR. COFFEE: I believe that's a transcript of a taperecording [sic] that was done in Spanish. I don't believe that this is testimony that was produced in Court at the time of trial.

MR. COLLINS: Your Honor, I would—

THE COURT: It was testimony that I heard, but I couldn't understand the videotape because it was in Spanish. You know we went down, came down here before they demolished this floor or maybe it's in the second down there: it was a county court video back here.

MR. COFFEE: Yes, sir.

THE COURT: But we observed in there and all of the testimony in here.

MR. COLLINS: Judge, the testimony that's contained in the Defendant's Exhibit No. 1 is the same testimony as interpreted by Linda Hernandez, the same interpreter in the video room.

THE COURT: Yes. I believe what we are at was in our evidence, in order for him to move her panties, that's the touching.

MR. COFFEE: That's the area and that's where the touching comes in.

We disagree with the State's assertion that this colloquy shows that the trial judge did not consider the videotape testimony. If anything it indicates that the trial judge did consider this evidence. However, absent findings of fact and conclusions of law, the appellant has failed to carry his burden of proving that the trial court relied upon or even considered the inadmissible evidence in reaching his verdict. Nonetheless, before employing the presumption that the trial judge disregards incompetent evidence, we must first determine whether other sufficient proper evidence was admitted to sustain the judgment.

After excluding the transcript of the video proceedings and reviewing the remaining evidence, there was clearly insufficient proper evidence to maintain the presumption that the trial court disregarded the inadmissible evidence.

The State asserts that evidence that D___ L___ told her mother that the appellant "pushed my panties to the other side" constitutes sufficient proper evidence that the appellant touched the genitals of the complainant as charged in the indictment. The State relies on an opinion by a divided panel of this Court in *Resnick v. State,* 574 S.W.2d 558 (Tex.Cr.App.1978).

In *Resnick, supra,* the defendant challenged his conviction for public lewdness, arguing that the evidence failed to show a touching within the meaning of that word as used in the statutory definition of sexual contact.[2] The evidence in that case showed that the defendant and an undercover officer entered a coin-operated movie booth at an arcade. As the officer and defendant watched the movie, the appellant placed his hand on that portion of the officer's trousers which covered his genitals. The officer's clothing remained on at all times. Consequently, the defendant's hand did not make flesh-to-flesh contact with the officer's genitals.

This Court rejected the defendant's contention that the evidence failed to establish a touching. In so doing this Court wrote:

... Webster's New Twentieth Century Dictionary of the English Language, Unabridged, Second Edition (1978) gives the following as its first definition of 'touch':

'1. to put the hand, finger, or other part of the body on, so as to feel; to perceive by the sense of feeling.'

This definition makes it quite plain that the essence of the act of touching is to perceive by the sense of feeling. It is a matter of the commonest knowledge that the interposition of a layer of fabric between a person's hand and an object upon which the hand is placed will not

2. V.T.C.A. Penal Code, § 21.01(2) reads:
(2) 'Sexual contact' means any touching of the anus, breast, or any part of the genitals of

another person with intent to arouse or gratify the sexual desire of any person.

prevent that person from feeling the object thus concealed.

*Id.*, at 559–560.

*Resnick, supra,* clearly dismisses the notion that "a touching" requires proof of flesh-to-flesh contact. The facts in that case, however, showed that the defendant "placed his hand on that portion of the officer's trousers which covered his genitals." *Id.*, at 559. On the contrary, the properly admitted evidence in this case only indicates that the appellant pushed the complainant's panties to the side. Without the videotape evidence there is absolutely nothing in the record to show that the appellant touched the complainant's vagina.[3]

Thus, there is no evidence that the complainant felt the appellant touch her genitals. In fact, the evidence is replete with evidence to the contrary. Both the complainant and the mother's recall of the complainant's outcry indicate that before touching her genitals, the appellant was interrupted.

The record simply does not contain sufficient proper evidence, absent the videotape testimony, with which to maintain the presumption discussed in *Tolbert, supra.*

Having determined that the trial court erred in admitting the videotape testimony, we must now determine if the introduction of such evidence was harmful to the appellant under Rule 81(b)(2) Tex.R.App.Pro. *Mallory v. State,* 752 S.W.2d 566 (Tex.Cr. App.1988).

The appellant did not give any type of confession. Thus, as noted, the only evidence of actual touching is contained in the videotape. Obviously, under this state of the facts, we cannot conclude beyond a reasonable doubt that introduction of the child's videotape testimony made no contribution to the conviction. Rule 81(b)(2), *supra.*

## II.

Next, the appellant contends that the court of appeals erred by concluding that the evidence is sufficient to permit a rational trier of fact to find that the appellant touched the genitals of the complainant.

The sufficiency of the evidence must be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866 (Tex.Cr.App.1988). Moreover, in determining the sufficiency of the evidence, the reviewing court must consider all of the evidence, whether properly or improperly admitted. *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *Beltran v. State,* 728 S.W.2d 382, 289 (Tex. Cr.App.1987); *Dunn v. State,* 721 S.W.2d 325, 327 (Tex.Cr.App.1986). Thus, the improperly admitted videotape must be reviewed in determining the sufficiency of the evidence in this case.

The court of appeals found, after reviewing the videotape, that "in ... pulling the panty to the side, ... the back of the appellant's fingers unavoidably touched the complainant's exterior genitalia." The court of appeals further found:

> As finder of fact, the trial judge was entitled to consider the contrast between the child complainant's manual demonstration and her verbal description of the appellant's acts, and to conclude from the evidence before him that [the] appellant did touch the complainant's genitals, as alleged in the indictment. *Deason v. State,* No. 01–86–00716–CR, p. 4 of slip opinion.

After our previous discussion of the State's point of error, it is apparent that if the evidence is to be deemed sufficient

---

**3.** In reviewing the appellant's sufficiency point of error, the court of appeals noted:

> While the complainant's verbal testimony was that the appellant 'tried to touch' or 'was going to touch' her genitals, the videotape discloses more. The complainant, as shown on the videotape, used both her fingers and the male and female dolls ... to *demonstrate how* the appellant lifted her dress, placed the fingers of his right hand under the elastic along the left leg of her panties, and pulled the panties from left to right across her crotch area.

such a determination will rest upon the contents of the videotaped interview. In this regard, the audio portion of the videotape only reiterates the complainant's testimony on direct examination. That is, that the appellant "was going to touch my pee-pee," but did not actually do so. The sufficiency of the evidence in this case then is solely dependent upon the complainant's videotaped demonstration of what the appellant actually did.

█ The appellant disagrees with the court of appeals' contention that in moving the panties to one side, the appellant "unavoidably touched the complainant's exterior genitalia." The appellant asserts that, at best, the child's videotaped demonstration is ambiguous.

Although the question is close, after reviewing the videotape, we agree with the court of appeals. In other words, the demonstration by the complainant serves as a sufficient basis for the fact finder's determination that the appellant had touched the complainant's genitals when viewed in a light most favorable to the verdict. Consequently, the appellant's point of error is overruled.

The judgment of the court of appeals is affirmed and the cause is therefore remanded to the trial court for a new trial.

WHITE, J., concurs in result.

TEAGUE, Justice, concurring.

I concur only in the result that the majority opinion reaches, namely, that the judgment of the court of appeals, which reversed the trial court's judgment and ordered the cause remanded to the trial court for new trial, should be affirmed.

The record reflects that on direct appeal to the First Court of Appeals, Carl Wesley Deason, henceforth appellant, presented only two points of error for review, namely: (1) the evidence was insufficient to sustain the trial judge's decision to find appellant guilty of indecency with a child, and (2) the trial judge erred in admitting into evidence over objection a videotaped interview

session that occurred between the child complaining witness and a Houston Police Officer. The court of appeals overruled the first contention but sustained the second contention, and then reversed and remanded the cause for new trial. See *Deason v. State*, No. 01–86–00716–CR, August 20, 1987.

On direct appeal, the District Attorney responded to appellant's first point of error by asserting that the sufficiency of the evidence challenge could not be reviewed because an exhibit, the videotape recording, was not in the record of appeal. The court of appeals subsequently ordered the exhibit transmitted to that court, after which it reviewed and rejected appellant's contention that the evidence was insufficient to sustain the trial judge's decision to find appellant guilty of committing the offense of indecency with a child. I do not find in the record where the District Attorney filed any supplemental brief after the court of appeals obtained possession of the exhibit.

In response to appellant's second point of error, the local District Attorney made the following arguments: that any error in admitting into evidence the videotaped interview session was cured when appellant introduced into evidence a transcription of same; that because this was a trial to the court, the trial judge was presumed to have ignored any inadmissible evidence; that failure to have the videotape recording in the record precluded the appellate court from considering the point of error; and, lastly, it was unnecessary for the court of appeals to consider the constitutionality of the statutory provision that provided for the admissibility of the videotape recording because that court had already held the statutory provision was constitutional.

In an unpublished opinion, the First Court of Appeals, after correctly reviewing *all* of the evidence that the jury heard, concluded that the evidence was sufficient to support a conviction for indecency with a child "by touching the genitals," as alleged in the indictment. However, the court of appeals reversed the trial court's judgment

of conviction and remanded the cause to the trial court for a new trial on the basis of this Court's decision of *Long v. State,* 742 S.W.2d 302 (Tex.Cr.App.1987), which held that the statutory provision which permitted the State to introduce into evidence a videotaped interview session with a child victim unconstitutionally deprived the accused of his right of confrontation under both Federal and State Constitutions, and thus it was error of both state and federal constitutional magnitude to admit such evidence at the accused's trial over objection. Also see *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The court of appeals did not address the District Attorney's contention that because this was a bench trial it should be presumed that the trial judge ignored the inadmissible evidence, namely, the videotaped interview session that occurred with the child complaining witness.

The court of appeals summarily reversed the trial court's judgment of conviction after it found "Long" error. The District Attorney did not, however, even though he was the beneficiary of the "Long" error at trial, either on original submission or through a motion for rehearing, request the court of appeals do any kind of harmless error analysis. See, however, Rule 81(b)(2), Rules of Appellate Procedure, which had been in effect for almost one year when the court of appeals ruled favorably on appellant's contention. Thus, because the District Attorney did not raise in the court of appeals the issue that the error in admitting the videotaped interview session with the child complainant into evidence was harmless, such issue is not now before this Court for review, and this Court should not now, *sua sponte,* make that determination. See *Tallant v. State,* 742 S.W.2d 292 (Tex.Cr.App.1987).

This Court granted the petitions for discretionary review that were filed in this cause by (1) appellant and (2) the District Attorney. It refused the petition for discretionary review that was filed by the State Prosecuting Attorney's office. See *post.*

Appellant claims in his sole ground for review that the court of appeals should have entered a judgment of acquittal on his behalf because he claims that the evidence is insufficient as a matter of law to sustain his conviction for indecency with a child.

I find that appellant's claim that the evidence is insufficient to be totally and wholly without merit, if one considers *all* the evidence that the trial judge heard in this cause, both that which is admissible and that which is inadmissible, and if one will treat the trial court's error as "trial error." Because of its importance to the issue, I will later discuss the distinction between "trial error" and "sufficiency of the evidence error."

It is now axiomatic in our law that if an appellate court can conclude from *all* the evidence, that is, evidence which was properly admitted combined with evidence that was improperly admitted, and a rational trier of fact could have found the evidence sufficient, then the appellate court will hold the evidence to be sufficient. Thus, even if an appellate court sustains a defendant's contention that the trial court erroneously admitted evidence, there is no bar under the above rule of law that would prevent an appellate court from considering that evidence in judging a challenge to the sufficiency of the evidence.

The above rule of law was recently reaffirmed by this Court in *Thomas v. State,* 753 S.W.2d 688, 695 (Tex.Cr.App.1988), in which this Court pointed out the following: "In assessing the sufficiency of the evidence to support a conviction, *a reviewing court must consider all evidence* which the jury was permitted, whether rightly or wrongly, to consider. *Beltran v. State,* 728 S.W.2d 382, 389 (Tex.Cr.App.1987); *Porier v. State,* 662 S.W.2d 602, 605–606 (Tex. Cr.App.1984) ..." (Emphasis in original.) Also see *Faulder v. State,* 745 S.W.2d 327, 330 (Tex.Cr.App.1987), and *Dunn v. State,* 721 S.W.2d 325, 327 (Tex.Cr.App.1986).

"Trial error" or "judicial error" is to be distinguished from "sufficiency of the evidence error." Generally, double jeopardy does not attach when a case is reversed by an appellate court because of trial error,

but double jeopardy does attach when a judgment of acquittal is ordered entered after the appellate court finds that the evidence is insufficient. See *Franklin v. State,* 693 S.W.2d 420 (Tex.Cr.App.1985), *Ex parte Duran,* 581 S.W.2d 683 (Tex.Cr.App.1979), and *Ex parte Sorola,* 769 S.W.2d 920 (Tex.Cr.App.1989).

The term "trial error" is actually self-explanatory. "Trial error" occurs when the trial judge is called upon to act, usually to determine the admissibility of some piece of evidence, and he erroneously overrules the defendant's objection to the admissibility of that evidence, and an appellate court later determines that the trial judge erred in admitting such into evidence. This kind of error, however, is only "trial error," which is not synonymous with "sufficiency of the evidence error." This is because under our law at this time an appellate court, in reviewing a challenge to the sufficiency of the evidence, is entitled to review *all* the evidence, both that which has been held admissible and that which has been held inadmissible. For further discussion on this subject, see *Gardner v. State,* 699 S.W.2d 831 (Tex.Cr.App.1985) (Teague, J., concurring and dissenting opinion.) Also see *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); and *Gregg v. State,* 667 S.W.2d 125, 130 (Tex.Cr.App.1984).

Thus, appellant's contention that the evidence in this cause is insufficient to sustain the trial judge's decision to find appellant guilty of indecency with a child is totally without merit if one considers *all* of the evidence, both that which was properly admitted and that which was improperly admitted. In this instance, I find, as did the court of appeals, that the properly admitted evidence, when combined with the improperly admitted evidence, causes the evidence to be more than sufficient to sustain the trial judge's decision to find appellant guilty of committing the offense of indecency with a child. Appellant's petition for discretionary review should be dismissed as having been improperly granted. Also see *Martin v. State,* 753 S.W.2d 384 (Tex.Cr.App.1988) (Duncan, J., concurring opinion,

in which the author of the majority opinion opined that where a court of appeals has resolved against a defendant a challenge to the sufficiency of the evidence, *this Court should never grant an appellant's petition for discretionary review that challenges that decision of a court of appeals.* E.g., *Meraz v. State,* 785 S.W.2d 146 (Tex.Cr.App.1990).

Therefore, it would be proper for this Court to end its discussion regarding appellant's challenge to the sufficiency of the evidence on this note. However, for reasons not exactly clear from the majority opinion, it injects into this cause a rule of law that comes to us from the civil side of the street, see *post.* The majority opinion appears to have transformed the civil rule of law into another "harmless error" rule.

After reading many of the civil cases which have interpreted the civil rule of law, I am afraid that those members of this Court who join the majority opinion do not understand the rule, as it existed and was applied on the civil side of the street. The rule provides that in a challenge to the sufficiency of the evidence on appeal, where trial was to the court, even if the trial judge erroneously overruled an objection to the admissibility of certain evidence, if there was sufficient evidence without the inadmissible evidence to sustain the trial judge's decision, the trial court's judgment will nevertheless be affirmed. Is this not a form of some type of "harmless error" rule? Isn't Rule 81(b)(2), Rules of Appellate Procedure, which does not distinguish between a trial to the court and a jury trial, and which is only applicable to erroneous rulings on the admissibility of evidence, and which has nothing whatsoever to do with a challenge to the sufficiency of the evidence, this Court's harmless error rule when it comes to making the determination whether, notwithstanding that it was error to admit certain evidence, such error was harmless beyond a reasonable doubt? Rule 81(b)(2) provides:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appel-

late court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

This Court, of course, should always leave rules of law that have been created on the civil side of the street to that side of the street, because it has a tendency to misunderstand them, which causes this Court to misapply them in a criminal case. See, for example, *Combs v. State*, 643 S.W.2d 709 (Tex.Cr.App.1982). But also see *Gold v. State*, 736 S.W.2d 685, 691 (Tex.Cr.App.1987) (Teague, J., dissenting opinion).

I must ask: How many harmless error rules can the bench and bar of this State cope with? With the adoption of the one created by our sister Supreme Court of Texas in this cause, and those that are extant at this time, I dare say that no other supreme appellate court in this Nation has more harmless error rules than this Court now has. Also see *Beathard v. State*, 767 S.W.2d 423 (Tex.Cr.App.1989) (Teague, J., dissenting opinion.)

Rather than keep the matter simple, and apply Rule 81(b)(2) to the "Long" error that occurred in this cause, the majority opinion, for reasons that are not all that clear, invokes and applies to this cause a rule of law that was created on the civil side of the street. That rule is as follows: "When a cause is tried before the court and there is nothing to show that the judgment was based upon the inadmissible evidence (such by findings of fact or conclusions of law) it will be presumed that the trial judge disregarded incompetent evidence admitted at the trial and the judgment will not be reversed on appeal on the ground of the admission of incompetent evidence if sufficient proper evidence was admitted to sustain the judgment."

The majority opinion relies upon *Tolbert v. State*, 743 S.W.2d 631 (Tex.Cr.App.1988), a plurality opinion of this Court, as its authority. Interestingly, at no place in *Tolbert*, which involved another "Long" error situation, will one find mention of Rule 81(b)(2). *Tolbert* simply invoked and summarily applied the above rule that had been

created on the civil side of the street. Amazingly, the majority opinion in this cause treats us with not only the rule that was created on the civil side of the street, but it also gives us a dose of Rule 81(b)(2), which was, although not created by this Court, approved by this Court.

In this instance, the majority opinion finds that "the trial judge did consider [the inadmissible videotaped interview evidence]," and also finds that "Without the videotape evidence there is absolutely nothing in the record that the appellant touched the complainant's vagina," (footnote deleted). Thus, if this Court applies the reverse of the "Tolbert" presumption rule, why doesn't appellant get an outright acquittal from this Court? The only good reason I can come up with at this time is that such a decision would not only cause a perverted individual to be acquitted, it would shock the conscience of a majority of this Court.

Isn't it rather strange that after invoking and applying the above "civil presumption rule" to this cause, the majority opinion in this cause ultimately falls back on the harmless error rule set out in Rule 81(b)(2), but nowhere in *Tolbert*, upon which the majority opinion relies as its authority, can one find any reference to Rule 81(b)(2)?

The confusing majority opinion is, however, understandable when one considers that its authority is *Tolbert v. State*, which opinion, given the issue that this Court had to resolve, is truly one of this Court's most incomprehensible, illogical, and nonsensical opinions ever handed down. Also see *Miffleton v. State*, 777 S.W.2d 76 (Tex.Cr.App. 1989). See, however, the dissenting opinion that I filed in *Tolbert*. Perhaps the idea of *Tolbert* is that if this Court follows *Tolbert* a sufficient number of times, then by sheer number that opinion will become authoritative, rather than simply incomprehensible, illogical, and nonsensical.

The civil presumption rule, however, is not an absolute rule without exceptions. Justice Garrett of the Supreme Court, in that Court's 1891 decision of *Moore v. Kennedy*, 81 Tex. 144, 16 S.W. 740 (1891), that he authored for the Court, after setting out the above general rule, and after having

reviewed the record, rejected applying the presumption to that cause: "But we are of the opinion, from a careful examination of the statement of facts found in the record, that the learned judge who tried the case below was influenced in his judgment by the incompetent evidence that was admitted." (16 S.W. at 741).

In any event, until the evolution of "trial error" versus "sufficiency of the evidence error" in our criminal jurisprudence occurred, when used in the proper context, the above civil rule of law could be applied to a criminal case. However, now that we have in our criminal jurisprudence the "trial error" versus "sufficiency of the evidence error" rule, as well as having Rule 81(b)(2), Rules of Appellate Procedure, in deciding the sufficiency of the evidence, does such civil rule of law have any place in our criminal jurisprudence? I think not, and I believe that today is a good day to exorcise it from our criminal jurisprudence. Again, appellant's petition for discretionary review should be dismissed as having been improvidently granted.

In his petition for discretionary review, the District Attorney's second ground for review reads: "Was the appellant denied his right to cross-examine and confront the witness against him where the complainant was called as a witness at trial and subjected to cross-examination prior to the introduction of the videotape?" The District Attorney urges this Court "to adopt the reasoning of Judge McCormick in his dissenting opinion in *Long v. State*, supra, and find that, under the facts of this case, the appellant's confrontation rights were not violated by the introduction of the videotaped statement." (Page 5 of the District Attorney's petition for discretionary review.)

The State Prosecuting Attorney, in the petition for discretionary review that he filed, which was refused by this Court without written opinion or comment, simply urged this Court to grant the State's motion for rehearing that had been filed in *Long v. State*, which was then pending on rehearing but had not yet been decided by this Court. However, by the time this Court ruled on whether or not to grant the State Prosecuting Attorney's petition for discretionary review, the State's motion for rehearing in *Long v. State* had been overruled. Thus, given what the State Prosecuting Attorney petitioned this Court to review, and this Court's final decision of *Long*, supra, it is or should be understandable why this Court refused that petition without comment or opinion.

Thus, at this time, the merits or demerits of this Court's decision of *Long v. State* are not open to debate. It is final and will remain the law of this State until at least five judges of this Court vote to overrule it. Therefore, the second ground for review that the District Attorney presents to this Court to review is now moot.

The District Attorney does not in his petition ask this Court to remand this cause to the court of appeals so that court can do a harmless error analysis, regarding the "Long" error that was committed in this cause. Therefore, there is no need for this Court to do a harmless error analysis. In short, the District Attorney has decided to gamble all of his money on a single roll of the dice, and he loses because of *Long v. State*. It should be axiomatic that if the State, through a District Attorney or the State Prosecuting Attorney, does not request either the court of appeals or this Court to do a harmless error analysis pursuant to Rule 81(b)(2), then that issue should never be addressed by this Court *sua sponte*.

Also see *Bynum v. State*, 767 S.W.2d 769, 776 (Tex.Cr.App.1989), and *Rodriquez v. State*, 759 S.W.2d 141 (Tex.Cr.App.1988).

The State's failure to raise the issue of harmless error pursuant to Rule 81(b)(2) in its petition is, however, perhaps understandable. The State's petition for discretionary review was filed on September 1, 1987. This Court's mandate in *Long* did not issue until January 29, 1988. In *Long*, this Court did not, when it came to "Long" error, consider the applicability of the harmless error rule, pursuant to Rule 81(b)(2), to such error. In short, under *Long*, if there was "Long" error in a case, it was "slam dunk" time for the defendant.

Also see *Jolly v. State*, 739 S.W.2d 345, 347 (Tex.Cr.App.1987). It was not until this Court decided *Mallory v. State*, 752 S.W.2d 566 (Tex.Cr.App.1988), on June 15, 1988, that "slam dunk" time ended for defendants who had "Long" error in their cases. It was in *Mallory* that this Court first concluded that a harmless error analysis pursuant to Rule 81(b)(2), Rules of Appellate Procedure, should take place when "Long" error was found in a case. Thus, in the beginning, and only by fortuitous circumstances, some defendants were granted new trials while others merely got a remand to the court of appeals for that court to make a harmless error analysis.

Since *Mallory*, however, if the court of appeals affirmed a case in which this Court found "Long" error to exist, and the State argued before this Court that the error could be harmless, this Court would remand the cause to the court of appeals so that court could first make a harmless error analysis. For some inexplicable reason, this Court's majority approved the plurality opinion of *Tolbert*, which caused it to deviate from the course it had previously chartered.

However, notwithstanding the above, one would think that if the District Attorney seriously wanted this Court in this cause to consider whether the "Long" error that was committed was harmless, he would have made that suggestion to this Court at some time after *Mallory* was decided, which was within the almost two years that his petition for discretionary review has been pending before this Court. Because the District Attorney has never requested this Court to invoke and apply to the "Long" error that occurred in this cause the doctrine of harmless error pursuant to Rule 81(b)(2), this Court has no business making a harmless error analysis of the "Long" error that occurred in this cause.

In closing, I point out that a majority of this Court has long been in lock step with whatever the Supreme Court of the United States states and holds when it comes to federal constitutional law, and applies same in rote fashion to provisions of our Texas Constitution. Just recently, in *Bennett v.*

*State*, 766 S.W.2d 227 (Tex.Cr.App.1989), a majority of this Court ruled that Rule 81(b)(2) represents nothing less than a codified progeny of the Supreme Court's harmless error rule as enunciated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the Supreme Court held that in determining whether federal constitutional error was harmless, "The question, however, is not whether the legally admitted evidence was sufficient to support the death sentence, which we assume it was, but rather, *whether the State proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. Chapman*, 386 U.S., at 24, 87 S.Ct., at 828." (Emphasis supplied.) 108 S.Ct. at 1798. Thus, logically at least, it stands to reason that if the State does not urge and argue that the error was harmless, it has waived the complaint that the error was harmless.

For the above reasons, I only concur in the result that the majority opinion reaches, that the judgment of the court of appeals must be affirmed.