**Victor Mature NICKERSON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–89–00352–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

June 14, 1990.

Discretionary Review Granted
Sept. 19, 1990.

Gregory L. Donnell, Angleton, for appellant.

Jim Napel, Brazoria Co. Dist. Atty., James L. Turner & Kelly McClendon, for appellee.

Before BISSETT,[1] COHEN and SAM BASS, JJ.

## OPINION

SAM BASS, Justice.

Appellant, Nickerson, appeals his conviction of burglary of a building. The jury assessed punishment at 50 years and a $5,000 fine.

We reverse and order an acquittal.

About 5:00 a.m., on November 28, 1987, David Yates saw a dark-colored car with a light top parked at a Radio Shack in Pearland. Yates pulled into the Radio Shack parking lot when he saw the person in the car duck. Yates then saw two male figures running out of the Radio Shack. The vehicle left the lot, and Yates could not tell what race the males were or what they were wearing. He followed the car, but lost it, and returned to the store and met Officers Uresti and Slowik of the Pearland Police Department. The officers had responded to a dispatch based on an audible alarm switched to the police station. Yates gave them a description of the vehicle and its last known location. Uresti said Yates described the vehicle as a dark brown or

---

1. The Honorable Gerald Bissett, Justice, retired, Court of Appeals, Thirteenth District of Texas at Corpus Christi, sitting by assignment.

blue Chevy, Pontiac or Oldsmobile with a light top.

After receiving Yates's description, Officer Slowik drove his patrol car in the direction Yates had indicated, and Uresti took more information from Yates. Uresti heard over the police radio that Slowik had spotted a vehicle fitting the description of the vehicle, and joined in the chase. Sergeant Webb heard the same communication and headed toward the intersection of Broadway and Barry Rose, where he saw a dark-colored vehicle with a white landau top, southbound on Barry Rose. He pulled alongside the vehicle, shined a light inside it, and saw two black males. Webb noticed one of the passenger's upper teeth were gold. Uresti and Webb saw two black males exit the vehicle in opposite directions while it was still running. They described the passenger as wearing a black, three-quarter-length coat and levis. The vehicle collided with a garage.

After four hours of searching for the suspects, Webb returned to the area of the garage, and found the passenger standing on the road. His shoes were wet; and he was wearing the black leather coat, with mud and water stains. Webb asked his name, and appellant said "Victor Webb." At trial, Webb identified appellant as the passenger in the vehicle. After the Cutlass collided with the garage, Webb looked inside the car and saw three VCR's and a small portable television with a radio in it.

Lieutenant Chapman responded to the burglary call at the store. He said the shelves looked like someone had pulled something off them, leaving wires hanging out. He identified State's exhibit 9, a photograph, as depicting the Radio Shack shelves with the wires hanging down, and stated that the equipment on the floor was a Realistic VCR. Chapman went to the Cutlass/garage collision and examined the car. He saw three or four Realistic VCR's and a Realistic television on the car's rear floorboard. Chapman looked at exhibit 5, a photograph, saying it depicted the same electronic equipment he saw in the car. The photo showed four VCR's and a television set.

Robert Feagin, the regional loss prevention manager of Radio Shack, testified he did not personally see the equipment that was stolen, and the serial numbers of the equipment were not written down, but he was "fairly certain" some electronic equipment was taken from the store. Feagin testified he knew the equipment was stolen by reviewing the loss and damage report filed by the store manager. When Feagin attempted to describe the equipment, by referring to the loss and damage report, appellant objected that Feagin's testimony was hearsay. The court overruled the objection, even though the State had not proved the business record exception, nor any other exception to the hearsay rule. TEX.R.CRIM.EVID. 801. Feagin described the stolen equipment as one four-and-a-half-inch television with stereo, and four VCR's. The damage report was Feagin's sole knowledge of what was stolen. Feagin testified that a photograph of the items removed from the 1985 Cutlass (exhibit five) depicted the same type of items.

■ Appellant, in his first point of error, complains it was error for the trial court to allow Feagin to testify to the contents of the loss and damage report. The State concedes that the admission of such testimony was error, but contends it was harmless. We disagree that the error was harmless because Feagin's hearsay was the only evidence of what was stolen. Appellant was convicted not of burglary with intent to commit theft, but of burglary and committing and attempting to commit theft. TEX.PENAL CODE ANN. § 30.02(a)(3) (Vernon 1989). Thus, the jury charge required the State to prove that a television set and four VCR's were stolen. As the only evidence of that fact, Feagin's testimony was plainly harmful. TEX.R.APP.P. 81(b)(2).

Appellant's first point of error is sustained.

■ In his second point of error, appellant complains that the evidence was insufficient to prove beyond a reasonable doubt that appellant "attempted to commit and committed theft." Appellant, in his third point of error, alleges that the circumstan-

tial evidence is insufficient to establish the guilt of the appellant. Appellant points out that there was no evidence that the identical equipment recovered from the Cutlass was in the Radio Shack store before the burglary and removed as part of the burglary. Appellant relies on *York v. State,* 511 S.W.2d 517, 518 (Tex.Crim.App.1974), for the proposition that "When possession of recently stolen property is relied upon for conviction, it must be shown that the property is the identical property taken from the theft scene."

Upon review, the sufficiency of the evidence must be viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim. App.1988).

In reviewing the record, we find the brand of audio and video equipment Radio Shack sells is Realistic. Feagin was "fairly certain" some electronic equipment was taken from the Pearland store. Feagin said that State's exhibit five, a photo of four VCR's and a television, depicted products sold by Radio Shack. State's exhibit nine, a photo, depicted the way the shelves looked after the burglary. This evidence, while very persuasive, does not meet the *York* test of showing that the items found in the appellant's possession were the identical items taken in the theft incident.

■ We further find, upon a review of the record, that because there was no identification of the persons seen within the store or within the automobile by the witness, Yates, and because a time lapse occurred between the time that Yates lost the vehicle, and the time Officer Slowik located the vehicle, the circumstantial evidence is insufficient to afford a conviction. The time lapse would have been of sufficient length to permit someone to have exited the vehicle, or for someone to have entered the vehicle. Further, the evidence shows that Yates saw three people in the car, while only two were in it when it was stopped. Therefore, because of the trial error, and the insufficiency of circumstantial evidence, we sustain the appellant's second and third points of error. *See York,* 511 S.W.2d at 518; *Michalenko v. State,* 658 S.W.2d 760, 763–64 (Tex.App.— Austin 1983), *aff'd per curiam,* 678 S.W.2d 75, 76 (Tex.Crim.App.1984).

Appellant complains, in his fourth point of error, that the trial court erred in allowing into evidence a three-quarter-length coat, not previously disclosed to appellant as ordered by the court. The thrust of this complaint is that the introduction of the coat came as a surprise to appellant, denying him the opportunity to question its admissibility prior to trial and generally violating appellant's right to due process. Because of our ruling above, this complaint is now moot.

We reverse the judgment and order the trial court to enter an order of acquittal.

COHEN, Justice, dissenting.

I agree that point of error one should be sustained because the trial judge erroneously overruled appellant's hearsay objection when Robert Feagin, who had no personal knowledge of the facts, essentially read to the jury from a document prepared by someone else. This was hearsay, under TEX.R.CRIM.EVID. 801, and the State did not prove any exception allowing it. Feagin's hearsay testimony was plainly harmful because it was the only evidence of what was stolen. The indictment alleged that appellant stole a television and four VCR's. Thus, without Feagin's hearsay testimony, appellant would have been entitled to a directed verdict.

I do not agree that the State failed to prove that appellant committed burglary, and that the property found in the car was taken from the burglarized Radio Shack.

In reviewing sufficiency, we view the evidence in the light most favorable to the verdict, in order to determine whether any rational jury could have found the elements of the crime beyond a reasonable doubt. Moreover, we consider all of the evidence, including erroneously admitted evidence,

such as Feagin's hearsay testimony, in determining sufficiency. *Deason v. State,* 786 S.W.2d 711, 716 (Tex.Crim.App.1990).

The second point of error contends that the evidence was insufficient to show that the goods found in the car were those taken from the Radio Shack store.

Mr. Feagin testified that four Realistic brand VCR's, of the VHS type, and one Realistic brand television, with a 4½ inch screen, were taken from the store. The goods found in the car matched Feagin's testimony as to:

1) general types of items (VCR's and television);

2) total number of items (five);

3) specific number of VCR's and televisions (four and one);

4) brand of items (Realistic); and

5) specific description of VCR's and television (VHS and 4½ inch).

Moreover, these goods were found in a car that was near the crime scene shortly after the crime, that matched Mr. Yates' description, and that evaded arrest. When the attempt to escape by car failed, appellant fled on foot and then lied about his name when captured.

Appellant cites *York v. State,* 511 S.W.2d 517 (Tex.Crim.App.1974), and *Oliver v. State,* 69 Tex.Crim. 263, 153 S.W. 309 (1913), as authority that the State failed to show the goods recovered were those taken from the burglarized store. *Oliver* is plainly distinguishable. Pig Oliver was seen drinking Kentucky Tavern whiskey two or three months after a railway car had been burglarized and Kentucky Tavern whiskey stolen from it. Another man, Jim Hanson was also suspected. Hanson was a fugitive from justice at the time of trial. Oliver testified that the whiskey was Hanson's, and that Hanson allowed him to drink it. That testimony was uncontroverted. The court observed that Pig Oliver was "a negro that drinks a great deal," but, "all the witnesses gave the negro a good character for honesty." *Id.* at 309. Oliver worked near the rail depot, but no one saw Oliver around the crime scene the night of the burglary. In short, the evidence in *Oliver* was much weaker than here, and there was a reasonable hypothesis other than the guilt of Oliver, namely, the guilt of Hanson.

*York* is also distinguishable, in my opinion. York was accused of stealing a barricade blinker light from a highway construction site. He was found in a car parked at a construction site, sitting on top of a light that was still blinking. He was convicted of theft. The only witness who identified the property was the president of the company that owned the light. He did not recover the light from the police, did not know which of his employees had done so, did not know where the light was then located, had never seen the light in order to identify it as one of his company's, and the blinker light was not introduced into evidence. Although *York* supports reversal, I think the evidence here is stronger. Most importantly, the property here was identified by brand name, Realistic, which is Radio Shack's label. Moreover, Feagin saw a photo of the recovered property at trial, the photo was admitted in evidence, and the property it showed matched the property listed on the Feagin's damage report. The photo showed the right number of total items (five), the right number of VCR's (four), and the right number of televisions (one).

In my opinion, the presence, in a fleeing car, of five items of the same brand, type, number, and description as those stolen, so near in place and in time to the crime scene, is powerful circumstantial evidence that they were stolen in this burglary. What is the likelihood that appellant was innocently *riding* in a fleeing car containing this particular property, at this time and place? What is the likelihood, if his possession was not innocent, that appellant had stolen such similar merchandise from a different victim? It must be a minute chance that such a close match of property could occur then and there, innocently. That such a coincidence is so unlikely is simply another way of saying that it was not unreasonable for the jury to find appellant guilty. Since appellant presented no evidence, there is no hypothesis inconsistent with his guilt, except the remote possibility

of coincidence. Coincidence is not a reasonable hypothesis, in this case. Consequently, I would overrule point of error two.

In point of error three, appellant contends that the evidence was insufficient to prove that he committed burglary.

The evidence shows that shortly after the burglary, within a short distance of the burglary, appellant was in a car matching Yates' description and containing goods of the exact type, number, brand, and description as those stolen in the burglary. Moreover, appellant fled to avoid capture and, when captured, lied about his name.

Flight is evidence of guilt. Lying about one's name is evidence of guilt. Possession of goods recently stolen in a burglary is evidence of guilt. No reasonable hypothesis before us is inconsistent with appellant's guilt.

Looking at this evidence together and in a light most favorable to the verdict, I cannot say that no rational jury could reach this result. Indeed, these facts leave me more confident of appellant's guilt than I am in many cases where we affirm, without hesitation and with absolute certainty, based on dubious eyewitness testimony and hotly contested evidence. Consequently, I would overrule points of error two and three; sustain point of error one; reverse the judgment; and remand the cause to the district court for a new trial.

I respectfully dissent from the holding that the evidence was insufficient and from the resulting order of acquittal.