**Johnnie Frank SONTAG, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–458–CR.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 29, 1992.

Ross Palmie, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Scott A. Durfee, David Kiatta, Asst. Dist. Attys., Houston, for the State.

Before GILBERTO HINOJOSA, DORSEY, and FEDERICO G. HINOJOSA, Jr., JJ.

OPINION

GILBERTO HINOJOSA, Justice.

A court convicted appellant, Johnny Sontag, of driving while intoxicated. TEX.REV. CIV.STAT.ANN. art. 6701*l*-1 (Vernon 1989). Punishment was assessed by the trial court at ninety days in jail, probated for two years, and a $400.00 fine. By one point of

error appellant complains that the trial court erred in an evidentiary ruling concerning a custodial interrogation recorded in a DWI videotape. We reverse and remand for a new trial.

The evidence in this case shows that appellant was first observed by the police when he was driving on the 9600 block of Westheimer towards downtown Houston. He was speeding and weaving. Officer M.L. Poff pulled appellant over and, after several field sobriety tests, arrested him for driving while intoxicated. This episode was videotaped by a machine in the officer's car.

Appellant was then taken to a police station. He was given warnings as required by law and required to submit to a DWI videotape. This videotape included an audio track.

Appellant was subsequently charged by information with the offense of driving while intoxicated. He filed a motion to suppress which encompassed the audio portion of the video tape recording a custodial interrogation taken at the police station.

At the hearing on the motion to suppress, the evidence conflicted on whether appellant requested counsel several minutes before the station videotape was recorded. The first witness was Officer Ramirez. Ramirez was present at the police station the night appellant was arrested and processed him. When asked if appellant requested an attorney, Ramirez testified that appellant "may have made mention to that...." The next witness, Officer Poff, the arresting officer, testified that he did not recall appellant asking for an attorney.

At the suppression hearing, appellant testified that when the officers asked him to sign a DIC 23 statutory warning form, he replied that he would not sign anything until he talked to his attorney. On cross examination, appellant again testified that he asked for an attorney when the police attempted to get him to sign the statutory warning. He also testified that he requested counsel after he was videotaped. On redirect examination appellant testified that he requested an attorney before the video was given, and that the officers did

not give him an opportunity to speak with an attorney, but stated that he could do so "in a few minutes." The officer to whom appellant made his request for counsel did not testify at the suppression hearing. This officer had been shot and run over soon before trial and was unavailable.

The videotape indicates that appellant was required to perform numerous physical and mental tests, such as standing on one leg, closing his eyes and touching his nose, and reading outloud a paragraph on Texas history, our State bird, and our State flower. The officers gave appellant Miranda warnings again, and he responded that he would answer a few questions. A custodial interrogation followed in which appellant admitted he went to several bars, he consumed three drinks, and he was celebrating a friend's birthday party.

After reviewing the testimony, the trial court stated on the record his finding that appellant never made an "unequivocal" request for counsel. The court ruled that appellant's request for counsel was limited to seeking advice regarding the DIC 23 statutory warning form. The court refused to suppress the audio portions of the videotape in which appellant made these admissions.

During trial, appellant sought to introduce only the video portion of the station videotape, and not the audio track. The trial court denied appellant's offer, and ruled that he would only permit introduction of the entire tape or no part of the tape. Over objection to the trial court's ruling, appellant admitted the entire videotape. At the close of trial, the court found appellant guilty.

Appellant's sole point of error complains that the trial court erred in its ruling regarding the audio portion of the videotape. Four issues are raised in this point: 1) whether the trial court erred in refusing appellant's offer of the video portion of the tape; 2) whether appellant waived his right to complain of the audio portion of the videotape by moving to admit the entire videotape; 3) whether the audio portion of the videotape was inadmissible due to appellant's request for counsel; and 4) whether these alleged errors require reversal.

■ A party may introduce all or part of a written or recorded statement. *See e.g. Lucas v. State,* 791 S.W.2d 35, 52–53 (Tex. Crim.App.1989). Indeed, admitting part of a recorded statement may be the only way to keep out inadmissible matter.

For example, in *Lucas,* both the State and the defendant offered edited portions of a videotaped confession into evidence. Portions of the videotape were offered because other parts referred to inadmissible extraneous offenses. *Id.* at 53.

■ The rule that only part of a statement may be offered into evidence is tempered by the countervailing rule that if part of a written or recorded statement is admitted, the remainder of related writings *or recorded statements may be admitted by the opposing party. Id.;* TEX.R.CRIM.EVID. 106; *see also* Rule 107.

■ The proper ruling by the trial court here was to admit the offered portion of the videotape, and then to rule on an offer of the remainder by the State. Rule 107 of the Texas Rules of Criminal Evidence specifically permits either party to admit other portions of the same written or recorded statement, including evidence which would otherwise be inadmissible, for the purpose of explaining or placing the initial, incomplete offer in its proper context. *Lucas,* 791 S.W.2d at 53 (quoting *Roman v. State,* 503 S.W.2d 252, 253 (Tex.Crim.App.1974)); TEX.R.CRIM.EVID. 107. The purpose of this rule is to allow the other side to eliminate any false impressions created by the incomplete portions of the statement.

We find that the trial court's ruling that appellant could admit all or none of the videotape was error.

■ The State argues that appellant waived this error by admitting the entire videotape, which included the audio portion, after the trial court's adverse ruling. We disagree.

After the trial court ruled, appellant specifically informed the court of his objection and moved to introduce the video portion of the tape. The offer was denied. Appellant

objected to the court's ruling, but introduced the entire videotape because the video portion contained exculpatory information. Appellant's counsel preserved error by specifically informing the trial court of its error. TEX.R.APP.P. 52(a). Thus, the error was not waived by appellant's introduction of the entire videotape. Counsel was not required to stand on his objection, to his prejudice, and hope that the trial court's error was reversible on appeal.

The next issue we address is whether the audio portion of the videotape was inadmissible. Appellant argues that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), bars its admission because the questions asked were designed to elicit incriminating answers and he requested counsel before the tape was made. *See also Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1977) (After the right to counsel is expressed, all interrogation must cease).

*Miranda* and its progeny held inadmissible incriminating statements made by the accused if the authorities have not given the requisite warnings and the accused has not waived these rights. *See Rhode Island v. Innis,* 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). *Miranda* was primarily based on Fifth Amendment grounds. In *Shmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), the Supreme Court noted that the Fifth Amendment is not implicated if the evidence sought does not involve the communications of the accused. For example, writing or speaking for identification do not implicate the Fifth Amendment right against self incrimination. *Id.* at 764, 86 S.Ct. at 1832. DWI videotaping can involve both types of speech.

■ If, for example, the suspect is asked to recite the alphabet as a test to determine whether he is mentally impaired, the Fifth Amendment right against self incrimination is not implicated. *Id.* Consequently, prior assertions of the right to counsel, the right to silence, or for termination of the interview, will not render such subsequent recorded statements inadmissible.[1] *Miffle-*

---

1. The Sixth Amendment right to counsel is not implicated before trial unless the defendant is

faced with a "critical stage" of formal criminal proceedings. Because formal proceedings are

*ton v. State,* 777 S.W.2d 76, 81 (Tex.Crim. App.1989); *Jones v. State,* 742 S.W.2d 398, 407 (Tex.Crim.App.1987).

■■■ However, if the statement recorded after assertion of these rights involves questioning designed to elicit incriminating information, such as "how many drinks did you have," the answers are presumptively inadmissible. *Miffleton,* 777 S.W.2d at 81; *Jones,* 742 S.W.2d at 407; *see also Rhode Island v. Innis,* 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980) (defining when custodial interrogation occurs). Additionally, a recorded verbal assertion of these rights raises an inference of guilt, and cannot be disclosed to the jury. *Hardie v. State,* 807 S.W.2d 319, 322 (Tex.Crim. App.1991); *see Doyle v. Ohio,* 426 U.S. 610, 618–19, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) (assertion of the right to silence cannot be used to impeach a defendant a trial).

■■■ With these principles in mind, we now turn to the question before us, which is, whether the audio track of police questioning designed to elicit incriminating information was inadmissible under *Miranda.* The initial portion of the videotape involves the police asking appellant to read outloud a passage on Texas history. This is not subject to suppression regardless of whether appellant requested counsel because it does not involve questioning by the police designed to elicit incriminating information. *Miffleton,* 777 S.W.2d at 81.

■■■ The latter portion, however, includes questioning by the police regarding how many drinks appellant consumed and other incriminating information. *Miranda* bars admission of this portion of the videotape, if appellant effectively invoked his right to counsel before audiotaping and he did not subsequently waive this right. We must therefore determine whether appellant effectively invoked his right to counsel and if he subsequently waived that right.

In *Lucas v. State,* 791 S.W.2d 35 (Tex. Crim.App.1989), the Court of Criminal Appeals restated the rules restraining police conduct in an interrogation under these circumstances. Such questioning must cease when a party unequivocally indicates that he or she desires to speak to an attorney or to have one present during questioning. *Id.* at 45. If, however, the request is ambiguous or equivocal, then the police may direct additional questions to the suspect; provided however, that such questions are strictly limited to determining whether the suspect actually desires counsel. *Id.* at 46.

The trial court ruled that appellant's assertion of his right to counsel was "equivocal" and limited to a desire for counsel's assistance in deciphering the DIC 23 warnings, and the consequences of his refusal to take a breath test.

■■■ In reviewing the actions of a trial judge at a suppression hearing, we must construe the record in the light most favorable to his ruling. The court is the sole finder of fact and its findings will not be disturbed on appeal if there is any supporting evidence. *Carrasco v. State,* 712 S.W.2d 120, 122 (Tex.Crim.App.1986); *Stephenson v. State,* 494 S.W.2d 900, 905 (Tex.Crim.App.1973).

■■■ Even assuming this conclusion correct, *see Jones,* 742 S.W.2d at 405–06 (statement that "I think I want a lawyer" was an unambiguous request for counsel), no evidence supports the trial court's implied finding that the police thereafter directed questions to appellant which were strictly limited to determining if he actually desired counsel, and that he further responded negatively. Rather, the videotape conclusively shows the police requested appellant to submit to numerous tests to determine if he was intoxicated, they gave an additional *Miranda* warning, and requested that appellant waive his rights. At that point, appellant stated he would answer a few questions, and they initiated questioning about how much he had had to drink. Such continued questioning, after appellant's re-

usually brought well after the initial encounter, this right does not come into play here. *Forte v. State,* 707 S.W.2d 89, 91–92 (Tex.Crim.App.1986) (Sixth Amendment right to counsel not implicated during the decision to take a breath test).

The corresponding Texas Constitutional right, which is somewhat different, also does not require counsel's presence at this time. *Forte v. State,* 759 S.W.2d 128, 139 (Tex.Crim.App.1988).

quest for an attorney, even though equivocal, violated appellant's rights.

The next issue is whether appellant waived his right to counsel by agreeing to answer a few questions. Once asserted, waiver of the right to counsel only occurs if it is the product of a conversation, interview, or discussion initiated by the accused. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1977); *Lucas,* 791 S.W.2d at 46. As noted above, the videotape reveals that appellant was asked to perform sobriety tests, the police then gave him *Miranda* warnings and requested that he waive his rights. Thus, the videotape conclusively reveals that the police, and not appellant initiated questioning. Therefore, no waiver occurred. *Jones,* 742 S.W.2d at 404–05.

We therefore hold that the trial court erred in considering the audio portion of the videotape which included questioning by the police about how many drinks appellant consumed.

The final issue we address is whether the trial court reversibly erred in admitting the audio portion of the station videotape. We must determine if the error was harmless beyond a reasonable doubt. Rule 81(b)(2) of the Rules of Appellate Procedure provides:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment.

TEX.R.APP.P. 81(b)(2).

This was a trial to the court. In such cases, unlike those tried before a jury, there is a presumption that incompetent evidence admitted was disregarded by the fact finder. *Deason v. State,* 786 S.W.2d 711, 712–13 (Tex.Crim.App.1990); *Tolbert v. State,* 743 S.W.2d 631, 633 (Tex.Crim.App.1988) (citing cases).[2] One way to rebut the presumption is if the record shows that the inadmissible matter was relied upon or considered by the court. *Id.* at 713. This is established if findings of fact or conclusions of law indicate that the court relied upon the inadmissible matter, the record shows the court considered the evidence in reaching the verdict, or if the evidence is insufficient to sustain the judg-

---

2. We question whether the presumption in *Deason* holds continued viability. In *Harris v. State,* 790 S.W.2d 568, 586–88 (Tex.Crim.App. 1989), a case decided after *Deason,* the Court of Criminal Appeals carefully reviewed the history of the harmless error rule and rejected many aspects of the rule articulated in *Deason.*

For example, under *Harris,* an appellate court reviewing a jury trial is bound to review the error's effect in a neutral, evenhanded fashion. *Harris,* 790 S.W.2d at 586. A judgment will not be reversed simply if there is sufficient evidence to support the verdict, or if the evidence overwhelmingly supports the verdict. *Id.*

However, in *Deason,* the Court wrote that unless there is something in the record to indicate otherwise, there is a presumption that the judge disregarded inadmissible evidence erroneously admitted. *Deason,* 786 S.W.2d at 713. Thus, reversible error does not generally occur in a case tried to the court if legally sufficient evidence supports the verdict. *Deason,* 786 S.W.2d at 713. Apparently, unlike jury trials, the fact that the evidence was improperly admitted does not tend to establish that it was considered or relied upon by the fact-finder.

A trial to the court or the jury involve the same function: fact-finding. In performing this function, juries are no different than judges. It is unreasonable to presume that unless the record shows otherwise, a trial judge disregards evidence he just ruled admissible, but that juries do not. Rather, it is reasonable to assume that if the court admits the evidence, it will be considered and possibly will form a part of the judgment regardless of whether it is a trial to the court or jury. Logically, the trial court's decision to admit the evidence *prima facie* indicates that it was considered and relied upon by the court in rendering its verdict just as it is when the evidence is admitted before a jury.

Moreover, an entire class of cases in which reversible error occurred evades reversal under *Deason.* This class is composed of those cases in which (1) the *Deason* presumption is applied and (2) the case involves a close question of fact in which the inadmissible evidence "tipped the balance" in the judge's mind against the accused. The *Harris* methodology is specifically designed to trace the effect of the error and calls for reversal in just such a case. Accordingly, it would seem that *Harris* is a more appropriate method for assessing whether error was harmless, and the presumption in *Deason* should yield to this analysis in future cases.

Nevertheless, we are duty-bound to follow the Court of Criminal Appeals and we will apply *Deason* until it is changed or modified.

ment without the inadmissible evidence. *Id.* at 712–13.

 Under *Deason*, we must determine whether there is anything in the record, besides the fact that the evidence was erroneously admitted, to indicate that the trial court considered or relied upon the incriminating admissions made by the appellant during the improper questioning by the police.

We have reviewed the record, and find that the trial court stated that his decision was based primarily upon the scene video, which showed appellant weaving, and appellant's admission that he was at a bar for over seven hours at a birthday party. The admission that appellant was drinking at a birthday party for over seven hours was elicited by police questioning and appeared on the inadmissible audio portions of the video. After the inadmissible station audio was admitted, the defense called appellant and his companion as witnesses to explain what happened that night.

We find this evidence sufficient to rebut the presumption that the trial court did not rely upon inadmissible audio portions of the videotape in reaching its judgment. We must reverse unless we are convinced beyond a reasonable doubt that the inadmissible evidence did not contribute to the conviction. TEX.R.APP.P. 81(b)(2). We will apply the standards set forth in *Harris* to determine the effect of the error on the proceedings.

If the audio portion of the videotape had not been introduced, the fact that appellant had been in a bar at a birthday party for seven hours, and that he consumed three drinks, probably would not have come into evidence. The effect this evidence had on the proceedings was serious because it showed that appellant had both a reason and an opportunity to drink much more than three drinks that night. Moreover, it required appellant and his companion to attempt to explain why he had only three drinks during a seven hour birthday party. Without the inadmissible evidence, this testimony would not have come in. The defense could have rested after putting on the station video. This video, which even the State agreed was good, could have been

sufficient to create a reasonable doubt on the issue of intoxication. Thus, we cannot say beyond a reasonable doubt that the error did not contribute to the conviction.

We hold that the trial court reversibly erred in admitting and considering the inadmissible audio portion of the station videotape. We therefore reverse and remand for a new trial.